Jaimee Katz Sussner, Esq.
Joshua N. Howley, Esq.
SILLS CUMMIS & GROSS P.C.
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Court-Appointed Receiver*
*Colliers International NJ, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------x

WELLS FARGO BANK, NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE
REGISTERED HOLDERS OF AMHERST
PIERPOINT COMMERCIAL MORTGAGE
SECURITIES, LLC, MULTIFAMILY
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2019-SB59, *et al.,*

                 Plaintiffs,

    vs.

ALJO NORSE LLC, SETH LEVINE, *et al.,*

                 Defendants.

-------------------------------------------------------x

Civil Action No. 19-cv-17866 (MCA)(LDW)


**DECLARATION OF RICHARD J.
MADISON IN SUPPORT OF
RECEIVER'S MOTION TO APPROVE
SALE OF REAL PROPERTY FREE AND
CLEAR, AUTHORIZING DISTRIBUTION
OF SALES PROCEEDS, AND GRANTING
<u>OTHER RELATED RELIEF</u>**

RICHARD J. MADISON, pursuant to 28 U.S.C. § 1746, declares as follows:

1.    I am an Executive Managing Director of Colliers International NJ LLC ("**<u>Colliers</u>**" or "**<u>Receiver</u>**"), and I have personal knowledge of the facts and circumstances set forth in this Declaration unless otherwise indicated.

2.    Colliers is the Court-Appointed Receiver for the properties that are at issue in the above-referenced action pursuant to Orders of the Court entered on September 13, 2019 (ECF # 11), and amended on December 4, 2019 (ECF # 75) (together, the "**<u>Receiver Order</u>**").

3.    I respectfully submit this Declaration in support of the Receiver's Motion to approve the sale of certain real property that is a subject of this action, to authorize the Receiver

to disburse the net proceeds from the sale, and for related relief incidental to consummating the sale (the "**Sale Approval Motion**"), pursuant to Paragraphs 6(i) and 27 of the Receiver Order, and the Order Setting Forth Sales Procedures, entered May 29, 2020 (ECF # 102) (the "**Sales Procedure Order**").

4.      Specifically, pursuant to the Receiver Order and Sales Procedure Order, the Receiver respectfully requests the Court's approval of the Agreement of Purchase and Sale, dated as of April 7, 2021, amended on May 13, 2021, and as may be amended thereafter (the "**PSA**"),[1] entered into between Colliers and Stonegate Buildings, LLC, or its assignee ("**Purchaser**"), free and clear of all liens, claims, and encumbrances of any alleged interested or affected party (the "**Interested Parties**"), of the following property (the "**Subject Property**"):

| Title Holder | Property Address | First Priority Mortgagee |
|---|---|---|
| Aljo Norse LLC | 125 6th Avenue, Clifton, NJ 07011, also known as Block 16.09, Lot 11 | Wells Fargo Bank, National Association, as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59 ("**Wells**" or "**Plaintiff**") |

---

[1] Annexed hereto as **Exhibit A** is a true and correct copy of the PSA, including the First Amendment to the PSA dated May 13, 2021.

**The Status of the Subject Property**

5.      As set forth in the Receiver's Monthly Status Reports submitted in connection with this action, and in prior pleadings filed with this Court, prior to the inception of the receivership, the Subject Property was neglected, in disrepair, and mismanaged by its owner.

6.      Consistent with its duties and obligations to this Court, the Receiver has taken steps to improve, maintain, and halt any further deterioration of the Subject Property. Nonetheless, as reflected in the Receiver's April 2021 Monthly Report annexed hereto as **Exhibit B**, the Subject Property is operating at a significant deficiency due to, among other things, the need for extensive maintenance and repairs at the Subject Property, and a number of defaulting tenants against whom collection has been stayed pursuant to the Executive Orders issued by Governor Murphy in response to the COVID-19 health emergency.

7.       While the Subject Property is the subject of a pending foreclosure action in New Jersey Superior Court, upon information and belief, the Subject Property has not been scheduled for sheriff's sale, and the first priority mortgagee for the Subject Property has consented to the proposed sale to Purchaser based upon the terms presented.

**Efforts to Market and Sell the Subject Property**

8.      In an effort to sell the Subject Property, Gebroe-Hammer Associates (the "**Broker**") was engaged to serve as the real estate broker and to market the Subject Property for sale. The Broker's efforts are detailed in the Declaration of Joseph Brecher submitted herewith.

9.      As set forth in more detail below and in Mr. Brecher's declaration, a purchase offer was ultimately received that, in Colliers' business judgment, is fair, reasonable, and the best opportunity to maximize a return to the Interested Parties.

**The PSA**

10.     On or about December 18, 2020, GH forwarded Colliers a Letter of Intent ("LOI") from Purchaser to purchase the Subject Property.

11.     Upon information and belief, Purchaser is not a successor in interest or alter ego of any the defendants in this action or of any Interested Party.

12.     Consistent with Colliers' experience with sales of similar properties, Purchaser required that any sale transaction result in its receipt of clear title to the Subject Property, free and clear of all prior liens, claims, and encumbrances.

13.     On or about April 7, 2021, Colliers and Purchaser executed the PSA, a non-binding contract for the sale and purchase of the Subject Property.  On May 13, 2021, Colliers and Purchaser executed an Amendment to the PSA solely to extend the due diligence period. See Exhibit A. The extended due diligence period has expired and the parties are now prepared to proceed to closing.

14.     My understanding is that the first position mortgagee for the Subject Property, Wells, has consented to the terms of the PSA although that the sales price will not satisfy its mortgage in full.

15.     Moreover, notwithstanding the Receiver's ongoing efforts to manage, repair, and preserve the Subject Property, because the secured debt held by Wells increases by virtue of accumulation of mortgage interest and real estate taxes, among other things, if this sale does not occur, I believe it will only become more difficult to market and sell the Subject Property.

16.     Based on the foregoing, Colliers respectfully requests that the Court grant this Motion, approve the Receiver's sale of the Subject Property free and clear of all liens, claims, and encumbrances, authorize the Receiver to disburse the net proceeds, including the amounts

identified as due to the Receiver in Exhibit C attached to the proposed Order submitted herewith, and establish the procedure for the Receiver's submission of a final accounting and discharge as to the Subject Property only.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 8, 2021.

_____

RICHARD J. MADISON

# Exhibit A

**AGREEMENT OF PURCHASE**

**AND SALE**

**dated as of April 7, 2021**

**between**

**Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to**

**the Receiver Order**

**as SELLER,**

**and**

**Stonegate Buildings LLC, a New Jersey limited liability company,**

**as PURCHASER**

## TABLE OF CONTENTS

**Page**

**ARTICLE 1 DEFINITIONS; RULES OF CONSTRUCTION** ............................................. 1

    1.1    Definitions ............................................................................................. 1

**ARTICLE 2 PURCHASE AND SALE; DEPOSIT; PAYMENT OF PURCHASE PRICE** ......................................................................................................... 6

    2.1    Purchase and Sale ................................................................................... 6

    2.2    Payment of Purchase Price ..................................................................... 6

**ARTICLE 3 COURT APPROVAL** ............................................................................... 6

    3.1    **Disclaimer/Court Approval** ................................................................. 6

    3.2    The Approval Order ............................................................................... 6

    3.3    Receivership Estate ................................................................................ 7

**ARTICLE 4 INTENTIONALLY OMITTED** ................................................................. 7

**ARTICLE 5 PURCHASER'S REPRESENTATIONS, WARRANTIES AND COVENANTS** ..................................................................................................... 7

    5.1    Organization and Power ......................................................................... 7

    5.2    Noncontravention ................................................................................... 8

    5.3    Litigation ................................................................................................ 8

    5.4    OFAC ...................................................................................................... 8

    5.5    Anti-Money Laundering Laws ............................................................... 8

    5.6    Patriot Act .............................................................................................. 8

    5.7    Survival .................................................................................................. 9

**ARTICLE 6 CONDITIONS AND ADDITIONAL COVENANTS** .................................. 9

    6.1    Conditions to Purchaser's Obligations .................................................. 9

    6.2    Conditions to Seller's Obligations ........................................................ 9

    6.3    Leases and Security Deposits ............................................................... 10

**ARTICLE 7 CLOSING** ............................................................................................ 10

    7.1    Closing .................................................................................................. 10

    7.2    Seller's Deliveries ................................................................................ 11

    7.3    Purchaser's Deliveries ......................................................................... 12

    7.4    Closing Costs ....................................................................................... 12

    7.5    Prorations. ............................................................................................ 12

    7.6    Escrow Agent ....................................................................................... 14

# TABLE OF CONTENTS
(continued)

**Page**

**ARTICLE 8 CONDEMNATION; RISK OF LOSS** ......................................................... 15

    8.1    Condemnation ....................................................................................... 15

    8.2    Risk of Loss .......................................................................................... 15

**ARTICLE 9 LIABILITY OF SELLER; TERMINATION RIGHTS** ................................ 15

    9.1    Liability of Seller ................................................................................. 15

    9.2    Termination by Purchaser .................................................................... 16

    9.3    Termination by Seller .......................................................................... 17

**ARTICLE 10 DUE DILIGENCE** .................................................................................... 17

    10.1    Feasibility Period ................................................................................. 17

    10.2    Delivery of Data .................................................................................. 18

    10.3    Right To Terminate During Feasibility Period .................................... 18

    10.4    Tenant Estoppels ................................................................................. 19

**ARTICLE 11 MISCELLANEOUS** ................................................................................. 19

    11.1    Completeness; Modification ............................................................... 19

    11.2    Assignments ........................................................................................ 19

    11.3    Successors and Assigns ....................................................................... 19

    11.4    Days ..................................................................................................... 19

    11.5    Governing Law .................................................................................... 20

    11.6    Counterparts ........................................................................................ 20

    11.7    Severability ......................................................................................... 20

    11.8    Costs .................................................................................................... 20

    11.9    Notices ................................................................................................. 20

    11.10    Incorporation by Reference ................................................................. 21

    11.11    Further Assurances .............................................................................. 21

    11.12    No Partnership ..................................................................................... 21

    11.13    Time of Essence .................................................................................. 21

    11.14    .  Time is of the essence with respect to every provision hereof. ....... 21

    11.16    Waiver of Jury Trial ............................................................................ 22

    11.17    Transfer Taxes ..................................................................................... 22

    11.18    No Representation; Purchaser's Duty to Review .................................. 22

7694679 v5

**TABLE OF CONTENTS**
(continued)

**Page**

11.19   Release of Seller ................................................................................. 23

11.20   Broker ................................................................................................. 24

11.21   Confidentiality; Public Disclosure ...................................................... 24

7694679 v5

**LIST OF EXHIBITS**

| | | |
|---|---|---|
| Exhibit A | - | Owner, Property, Purchaser and Purchase Price |
| Exhibit B | - | Legal Description of Land |
| Exhibit C | - | Sale Order |
| Exhibit D | - | Form of Deed |
| Exhibit E | - | Form of Bill of Sale |
| Exhibit F | - | Form of Assignment and Assumption of Leases and Intangible Rights |
| Exhibit G | - | Form of Environmental Indemnity Agreement |
| Exhibit H | - | Form of Tax Affidavit |
| Exhibit I | - | Form of Tenant Notice Letter |
| Exhibit J | - | Form of Affidavit of Title |
| Exhibit K | - | Form Estoppel Certificate |

7694679 v5

<u>AGREEMENT OF PURCHASE AND SALE</u>

THIS AGREEMENT OF PURCHASE AND SALE (this "<u>Agreement</u>"), dated as of April 7, 2021 ("<u>Effective Date</u>"), between Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver for that certain real property identified and described on Exhibits A and B annexed hereto and incorporated herein (hereinafter, the "<u>Property</u>"), and as more fully described on Exhibits A and B to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019 (the "<u>Receiver Order</u>"), in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpont Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW (the "<u>Action</u>") (Colliers International NJ LLC in such capacity is hereinafter referred to as "<u>Seller</u>"), and Stonegate Buildings LLC, a New Jersey limited liability company ("<u>Purchaser</u>").

RECITALS:

WHEREAS, Owner, as identified on Exhibit A, owns a fee simple interest in the Property (as further defined below); and

WHEREAS, pursuant to the Receiver Order entered by the United States District Court for the District of New Jersey (the "<u>Court</u>") in the Action, and an Order Setting Forth Sale Procedures, dated December 4, 2019, also entered by the Court in the Action, a copy of which is attached hereto as Exhibit C (the "<u>Sale Order</u>"), Seller is authorized to market and sell the Property; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, Purchaser desires to acquire from Seller and, subject to the entry of the Approval Order (defined below), Seller desires to sell to Purchaser the Property (as defined below) for the Purchase Price (defined below), upon the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree as follows:

**ARTICLE 1**
**DEFINITIONS; RULES OF CONSTRUCTION**

1.1     <u>Definitions</u>.

The following terms shall have the indicated meanings:

"<u>Agreement</u>" has the meaning set forth in the <u>preamble</u> hereto.

"<u>Applicable Laws</u>" means all statutes, laws (including common law), regulations, rules, ordinances, codes and other requirements of any Governmental Body, including any Orders.

"Approval Order" means an order of the Court approving the Transaction pursuant to this Agreement, and as further defined in the Sale Order, in form and substance acceptable to the Seller in its reasonable discretion.

"Assignment and Assumption Agreement" means an assignment and assumption agreement pursuant to which Seller shall assign without warranty or representation of any kind, and Purchaser shall assume from Seller, the Security Deposits and the Leases corresponding to the Real Property which such Purchaser shall acquire, a form of which is attached hereto as Exhibit F.

"Bill of Sale" means a bill of sale conveying title to the Tangible Personal Property, and Intangible Personal Property, to the extent assignable, from Seller to Purchaser, a form of which is attached hereto as Exhibit E.

"Business Day" shall mean any day other than a Saturday, Sunday, or any other day on which commercial banks in New Jersey are authorized or obligated to close under applicable laws.

"Claims" means claims, suits, proceedings, causes of action, Liabilities, losses, damages, penalties, judgments, settlements, costs, expenses, fines, disbursements, demands, reasonable costs, fees and expenses of counsel, including in respect of investigation, interest, demands and actions of any nature or any kind whatsoever.

"Closing" means a consummation of a purchase and sale of the Property pursuant to this Agreement.

"Closing Date" means the date on which the Closing occurs, but in no event later than the date identified in Section 7.1.

"Contracts" shall mean any contracts and agreements (other than the Leases) entered into by Seller (whether oral or written) during the Receivership Period, affecting or related to the Property by which Seller is bound in connection with the operation of the Property.

"Deed" means, with respect to the Real Property, a quitclaim deed conveying title to such Real Property from Seller to the applicable Purchaser in recordable form, in form attached hereto as Exhibit C, conveying to Purchaser all of Seller's right, title and interest in and to the Property, all in an "as-is, where-is condition, and with all faults," and without any representation or warranty other than as expressly set forth in this Agreement, subject to the Permitted Exceptions and acceptable to the Title Company.

"Effective Date" has the meaning set forth in the preamble hereto.

"Encumbrances" means all easements, rights of way, restrictions, executions or other encumbrances (including notices or other registrations in respect of any of the foregoing) affecting the title, current use, occupancy or operation of the Property or any part thereof or interest therein.

"Environmental Indemnity Agreement" shall mean that certain agreement in favor of Seller, a form of which is attached hereto as Exhibit G.

"Final Closing Statement" has the meaning set forth in Section 7.5(c).

"Governmental Body" means any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign.

"Hazardous Substances" means any substance, chemical or waste that is listed as hazardous, toxic or dangerous under any applicable federal, state, county or local statute, rule, regulation, ordinance or order.

"Improvements" means, with respect to the Land (or any portion thereof) all buildings, improvements, fixtures, structures, and other items of real estate located thereon.

"Intangible Personal Property" means, to the extent assignable, all intangible personal property, if any, under the control and in the possession of Seller and used solely in connection with the ownership, operation, leasing, occupancy or maintenance of the Property, including, without limitation, the escrow accounts, general intangibles, business records, plans and specifications, and surveys pertaining to the Real Property and the Personal Property, all licenses, permits and approvals with respect to the construction, ownership, operation, leasing, occupancy or maintenance of the Property, any unpaid award for taking by condemnation or any damage to the Land by reason of a change of grade or location of or access to any street or highway.

"Land" means the land legally described on Exhibit B hereto, or all such land (as the context may require), together with all easements, rights, privileges, remainders, reversions and appurtenances thereunto belonging or in any way appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of the Seller therein, in the streets and ways adjacent thereto and in the beds thereof, either at law or in equity, in possession or expectancy.

"Leases" means any agreements to lease, leases, renewals of leases, subtenancy agreements and other rights (including licenses) and all amendments thereto entered into directly between Seller and a tenant or occupant (and not any other party, including Owner) during the Receivership Period, in effect at the time of Closing, which Purchaser shall assume and Seller agrees to assign without representation or warranty, in accordance with Section 7.2 hereof by Assignment and Assumption Agreement.

"Liability" means any debt, liability, commitment or other obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or not yet due) and including all costs, fees and expenses relating thereto.

"Order" means any order, court order, writ, judgment, injunction, decree, stipulation, determination, decision, verdict, ruling, or award entered by or with any Governmental Body (whether temporary, preliminary or permanent).

"Party" means Seller or any Purchaser, individually, and "Parties" means Seller and Purchaser, collectively.

"Permitted Exceptions" means: (i) any state of facts that would be shown on any accurate survey of the Real Property prepared by a professionally licensed land surveyor, including any easements, rights of way, covenants, conditions, limitations and restrictions of record, (ii) all Encumbrances; (iii) laws, regulations, resolutions or ordinances, including building, zoning and environmental protection, as to the use, occupancy, subdivision, development, conversion or

redevelopment of the Real Property imposed by any Governmental Body, (iv) liens for Taxes not yet due and payable, (v) all other matters of public record, (vi) all exceptions set forth on the Title Commitment and not otherwise timely raised as Title Objections, and (vii) the Leases and other occupancies at the Real Property as set forth herein.

"Person" means an individual, a partnership, a joint venture, a corporation, a business trust, a limited liability company, a trust, an unincorporated organization, a joint stock company, a labor union, an estate, a Governmental Body or any other entity.

"Personal Property" means the Tangible Personal Property and the Intangible Personal Property.

"Property" means, the Real Property owned by Owner, all related Personal Property and Seller's interest in any Leases (to the extent any are in effect at Closing) and the Security Deposits.

"Purchase Price" means the purchase price specified on Exhibit A hereto, which may be adjusted in accordance with Section 7.5 herein (or as otherwise provided in this Agreement).

"Purchaser" has the meaning set forth in the preamble hereto.

"Real Property" means the Land and the Improvements.

"Receiver Order" shall have the meaning set forth in the preamble hereto.

"Receivership Period" shall mean the period commencing when Seller was appointed the receiver of the Property pursuant to the Receiver Order, through the Closing.

"Rent(s)" shall have the meaning set forth in Section 7.5(b) herein.

"Representative" means with respect to any Person, such Person's officers, directors, managers, employees, agents, representatives and financing sources (including any investment banker, financial advisor, accountant, legal counsel, agent, representative or expert retained by or acting on behalf of such Person or its subsidiaries).

"Security Deposits" means all refundable tenant security deposits and letters of credit in lieu of cash security deposits actually received by Seller pursuant to the Leases to the extent such deposits have not been applied against any obligations owing by such tenants under the Leases.

"Seller" has the meaning set forth in the preamble hereto.

"Survey" means a survey of the Real Property delineating the boundary lines of the Land, location of the Improvements, all rights of way and easements and contiguous public roads, as may be obtained by Purchaser at its cost and expense.

"Tangible Personal Property" means the items of tangible personal property consisting of all furniture, fixtures and equipment situated on, attached to or used solely in the operation of the Property, and all furniture furnishings, equipment, machinery and other personal property of every

kind located on or used solely in the operation of any Improvement that Seller has an interest in, if any, or the cash proceeds from the sale of any of the foregoing.

"Tax" or "Taxes" means any federal, state, local or non-U.S. net income, gross income, gross receipts, windfall profit, severance, property, production, sales, use, license, excise, franchise, employment, unemployment, payroll, withholding, alternative or add on minimum, ad valorem, value added, transfer, stamp, or environmental tax, escheat payments or any other tax, custom, duty, impost, levy, governmental fee or other like assessment or charge (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by a governmental authority against or on the Property.

"Title Company" means Riverside Abstract LLC, 212 Second Street, Suite 502, Lakewood, NJ 08701, Tel: (877) 848-5317.

"Title Commitment" means a title insurance commitment from the Title Company, describing the Real Property.

"Title Policy" means an owner's title insurance policy, pro forma, or marked and signed title commitment issued to Purchaser by the Title Company, pursuant to which the Title Company insures the Purchaser's ownership of fee simple title to the Real Property described therein subject only to Permitted Exceptions applicable to such Real Property (but also subject to any encumbrances and liens placed on the Property by Purchaser).

"Transaction" means the transactions contemplated by this Agreement to be consummated at the Closing, including, but not limited to, the purchase and sale of the Property.

"Transfer Taxes" means all state and local transfer, documentary, recording, sales, use, stamp, registration conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, or other similar Taxes or governmental assessment in the United States (including any state, municipality, or county).

Rules of Construction.

The following rules shall apply to the construction and interpretation of this Agreement:

(a)     Singular words shall connote the plural number as well as the singular and vice versa, and the masculine shall include the feminine and the neuter.

(b)     All references herein to particular articles, sections, subsections, clauses or exhibits are references to articles, sections, subsections, clauses or exhibits of this Agreement.

(c)     The table of contents and headings contained herein are solely for convenience of reference and shall not constitute a part of this Agreement nor shall they affect its meaning, construction or effect.

(d)     Each Party and its counsel have reviewed and revised (or requested revisions of) this Agreement, and therefore any usual rules of construction requiring that ambiguities are to

be resolved against a particular Party shall not be applicable in the construction and interpretation of this Agreement or any exhibits hereto.

## ARTICLE 2
## PURCHASE AND SALE; DEPOSIT; PAYMENT OF PURCHASE PRICE

2.1     <u>Purchase and Sale</u>.  Subject to the terms, conditions and provisions set forth herein, Seller agrees to sell, transfer, assign, set over and convey to the Purchaser "**as-is, where-is and with all faults**," and the Purchaser agrees to purchase, acquire and assume from Seller "**as-is, where-is and with all faults**," all of Seller's right, title and interest, if any, in, to and under the Property (subject to the Permitted Exceptions), for the Purchase Price.

2.2     <u>Payment of Purchase Price</u>.  Subject to the terms of this Agreement, Seller is to sell and Purchaser is to purchase the Property for the Purchase Price set forth on <u>Exhibit A</u>, and is incorporated herein.

(a)     The Purchase Price for the Property shall be paid in the following manner:

(i)     A deposit in the amount of $50,000.00 (the "<u>Earnest Money</u>"), shall be due when Purchaser signs this Agreement, payable in immediately available funds, and shall be delivered to the Title Company ("**Escrow Agent**"). The Earnest Money shall be held in escrow by the Escrow Agent in accordance with the terms of this Agreement. The Earnest Money will be non-refundable to Purchaser except as set forth in this Agreement.

(ii)     The balance of the Purchase Price, following any prorations and adjustments at Closing (all as provided below), is due on the Closing Date and is payable in immediately available funds and shall be paid by Purchaser to Seller by wire transfer of immediately available funds at the Closing. Wire instructions shall be sent by or on behalf of the Seller to the Escrow Agent on or before the Closing Date.

## ARTICLE 3
## COURT APPROVAL

3.1     **Disclaimer/Court Approval.  Purchaser acknowledges that it has no legally enforceable rights, claims or causes of action against Seller/Receiver hereunder unless and until this Agreement has been subject to a final, non-appealable Approval Order as defined in Paragraph 9 of the Sale Order.  This Agreement shall automatically terminate in the event the Court declines to enter the Approval Order, whereupon the Earnest Money shall be refunded to Purchaser.**

3.2     <u>The Approval Order</u>.  Seller shall timely prepare and file any applications, forms and documents as and when required to be filed under the Sale Order. The Approval Order, as applicable, shall, among other matters:

(a)     approve (i) this Agreement and the consummation of the Transaction upon the terms and subject to the conditions of this Agreement, and (ii) all actions as may be necessary or appropriate to effectuate the Transaction; and

(b)        authorize Seller to assign to Purchaser all Leases (if any); and

(c)        approve any other agreement to the extent provided by this Agreement;

3.3        Receivership Estate.  Purchaser acknowledges that Seller does not own the Property and that Seller is only the duly appointed receiver for the Property as provided in the Receiver Order. Notwithstanding anything in this Agreement to the contrary, any liability of Seller under this Agreement shall be limited solely to the receivership estate ("Receivership Estate") established pursuant to the Receiver Order. It is expressly acknowledged and agreed that no assets of Seller in its individual or limited liability capacity shall be subject to any claim for liability of Seller under this Agreement or in connection with, arising under, or as the result of any documents provided by Seller to Purchaser, any termination of this Agreement, or the consummation of the Transaction contemplated under this Agreement or under any of the documents delivered by Seller at or in connection with the Closing. Any claims of Purchaser under this Agreement shall be paid solely and exclusively from the Receivership Estate. Purchaser further acknowledges that Owner shall have no liability of any kind under this Agreement or with respect to the Property or the consummation of the Transaction.

**ARTICLE 4**
**INTENTIONALLY OMITTED**

**ARTICLE 5**
**PURCHASER'S REPRESENTATIONS, WARRANTIES AND COVENANTS**

To induce Seller to enter into this Agreement and to sell the Property to Purchaser, subject to the terms of this Agreement, Purchaser hereby makes the following representations, warranties and covenants, upon each of which Purchaser acknowledges and agrees that Seller is entitled to rely and has relied. Each such representation and warranty shall be true and correct in all material respects on the Effective Date and on the Closing Date.

5.1        Organization and Power.

(a)        Purchaser is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of New Jersey, and has all powers and all governmental licenses, authorizations, consents and approvals to carry on its business as now conducted and to enter into and perform its obligations under this Agreement and any document or instrument required to be executed and delivered on behalf of Purchaser hereunder.

(b)        Purchaser has full right, authority and capacity to execute and perform this Agreement and to consummate the Transaction.

(c)        if Purchaser is an entity or a trustee of a trust, the individual of the Purchaser who executes and delivers this Agreement and all documents to be delivered to Seller hereunder is and shall be duly authorized to do so.

(d)        Purchaser is not owned, in whole or in part, by, nor does Purchaser own or hold any part of the beneficial ownership in, Seller.

(e)     Purchaser is not in a significantly disparate bargaining position in relation to Seller.

(f)     Purchaser is represented by legal counsel of its own choice and designation in connection with the Transaction.

(g)     Purchaser is purchasing the Property for business or commercial investment or similar purpose and not for use as Purchaser's residence.

5.2     Noncontravention.   The execution and delivery of this Agreement and the performance by Purchaser of its obligations hereunder do not and will not contravene, or constitute a default under, any provisions of Applicable Law, Purchaser's organizational documents, or any agreement, judgment, injunction, order, decree or other instrument binding upon Purchaser.

5.3     Litigation.   To the knowledge of Purchaser, there is no action, suit or proceeding, pending or known by Purchaser to be threatened against or affecting Purchaser in any court or before any arbitrator or before any Governmental Body which (a) in any manner raises any question affecting the validity or enforceability of this Agreement or any other agreement or instrument to which the Purchaser is a party or by which it is bound and that is to be used in connection with, or is contemplated by, this Agreement, (b) could affect the ability of any Purchaser to perform its obligations hereunder, or under any document to be delivered pursuant hereto, (c) could create a lien on the Property, any part thereof or any interest therein, or (d) could adversely affect the Property, any part thereof or any interest therein, or the use, operation, condition or occupancy thereof.

5.4     OFAC.  Purchaser is not now nor shall it be at any time prior to or at the Closing a Person with whom a U.S. Person is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.  Neither Purchaser nor any Person who owns an interest in Purchaser (collectively, a "Purchaser Party") is now nor shall be at any time prior to or at the Closing a Person with whom a U.S. Person, including a Financial Institution, is prohibited from transacting business of the type contemplated by this Agreement, whether such prohibition arises under United States law, regulation, executive orders and lists published by OFAC (including those executive orders and lists published by OFAC with respect to Specially Designated Nationals and Blocked Persons) or otherwise.

5.5     Anti-Money Laundering Laws.  Neither Purchaser nor any Purchaser Party, nor any Person providing funds to Purchaser: (a) is under investigation by any governmental authority for, or has been charged with, or convicted of, money laundering, drug trafficking, terrorist related activities, any crimes which in the United States would be predicate crimes to money laundering, or any violations of any Anti-Money Laundering Laws; (b) has been assessed civil or criminal penalties under any Anti-Money Laundering Laws; or (c) has had any of its funds seized or forfeited in any action under any Anti-Money Laundering Laws.

5.6     Patriot Act.  To Purchaser's knowledge, Purchaser is in compliance with any and all applicable provisions of the Patriot Act.

5.7     Survival.  All representations and warranties in this Article 5 shall survive the Closing for a period of one (1) year.

## ARTICLE 6
## CONDITIONS AND ADDITIONAL COVENANTS

6.1     Conditions to Purchaser's Obligations.  Purchaser's obligations hereunder are subject to the satisfaction of the following conditions precedent with respect to the Property and the compliance by Seller with the following covenants, to the extent applicable to Seller:

(a)     Seller's Deliveries.  Seller shall have delivered to the Title Company or the Purchaser, as the case may be, on or before the Closing Date, all of the documents and other information required of Seller pursuant to Section 7.2.

(b)     Court Approval.  The Court shall have entered the Approval Order.

(c)     Owner's Title Policy.  Subject to Article 10, Purchaser shall have obtained a Title Policy for the Property subject to the Title Company's receipt of payment of the cost therefor as hereinafter provided in Section 7.4, in the amount of the Purchase Price and insuring title to the Property subject to the Permitted Exceptions (but also subject to any encumbrances and liens placed on the Property by Purchaser); provided Purchaser, at its cost and expense, shall have the right to request that the Title Company issue extended coverage or endorsements to such standard policy of title insurance as part of or in connection with the issuance of the above-noted Title Policy. The issuance of such extended coverage or endorsements is not a condition precedent to the Closing and shall not delay or extend the Closing Date; provided, however that this condition precedent set forth in this Section 6.1(c) shall be deemed waived by Purchaser if Purchaser fails to use commercially reasonable efforts to obtain such Policy with respect to a specific Property.  Title to the Property shall be free and clear of liens, other than the Permitted Exceptions, to the extent sale proceeds are available for such purpose after payment to the plaintiffs in the Action and payment of such monetary liens and encumbrances has been approved by the Court.

6.2     Conditions to Seller's Obligations.  Seller's obligations hereunder are subject to the satisfaction of the following conditions precedent with respect to the Property and the compliance by Purchaser with the following covenants, to the extent applicable to Purchaser:

(a)     Purchaser's Deliveries.  Purchaser shall have delivered to the Title Company, on or before the Closing Date, the Purchase Price and all of the documents and other information required of such Purchaser pursuant to Section 7.3.

(b)     Representations, Warranties and Covenants; Obligations of Purchaser.  All of Purchaser's representations and warranties made in this Agreement shall be materially true and correct as of the Effective Date and as of the Closing Date as if then made and Purchaser shall have performed all of the covenants and other obligations under this Agreement applicable to the Purchaser(s).

(c)     Court Approval.  The Court shall have entered the Approval Order.

6.3     Leases and Security Deposits.  Seller does not undertake or guarantee that the status of the Leases will not change prior to the Closing or that any Lease will be in full force or effect on the Closing, and Purchaser agrees that the voluntary or involuntary expiration or termination of any such Lease(s) or removal of tenants or occupants before or after institution of summary proceedings or otherwise shall not give rise to any reduction or abatement of the Purchase Price or other claim or remedy on the part of Purchaser against Seller.  Seller shall not, without the prior consent of Purchaser, which consent shall not be unreasonably withheld, conditioned or delayed, enter into new leases for vacant portions of the Property after the expiration of the Feasibility Period that are below market for the municipality where the Property is located (except as may be required by Law in connection with existing Tenants of the Property), provided this Agreement has not been terminated and otherwise remains in effect.  If Purchaser does not provide written consent or detailed reasons in writing for disapproval of a new lease within three (3) Business Days after its receipt of Seller's request for consent, Purchaser's consent shall be deemed given.  Notwithstanding anything to the contrary herein, to the extent the foregoing conflicts with the Receiver Order, such consent right of Purchaser will have no force or effect.  At Closing, Seller shall afford Purchaser a credit in the amount of all cash Security Deposits, including any interest thereon, held by the Seller or its agent as of the Closing Date and shall assign to Purchaser all rights with respect to any such Security Deposits that are other than cash.  Purchaser acknowledges that although a request has been made for the Owner to turn over all Security Deposits received by Owner in connection with the Real Property to Seller, such funds are, apparently, no longer with Owner.  Paragraph 17 of the Receiver Order provides in relevant part as follows:

> The Receiver shall not be liable or responsible for . . . any obligation or liability to refund, return or reimburse any security deposit(s) to any tenant(s) of the Properties that were paid by the tenant(s) to the owner of the applicable Property (the "Owner") prior to the date on which the original Receiver Order applicable to that Property was entered and for which the Owner of that Property has not transferred such security deposit to the Receiver.

Purchaser shall be responsible for any and all fees payable to the issuer of any letter of credit in connection with the transfer of any such letter of credit to Purchaser in connection with Closing, unless such fees are payable by the Tenant on whose behalf the letter of credit was issued.

**ARTICLE 7**
**CLOSING**

7.1     Closing.  The Closing shall take place at 10:00 a.m. on the date that is the later of (i) sixty (60) days after the date on which the Court enters the Approval Order ("Closing Deadline"), provided that the Closing Deadline shall be extended if any appeal of the Approval Order is filed within such sixty (60)-day period, by the period of time necessary to resolve such appeal and obtain a final, non-appealable Approval Order; or (ii) thirty (30) days after the expiration of the Feasibility Period (hereafter defined) (subject to the satisfaction or waiver in writing of the conditions set forth in Article 6 and Article 7 (other than any conditions that can only be satisfied as of the Closing, but subject to the satisfaction or waiver of such conditions)), through an escrow arrangement with the Title Company, or at such other time or place, or in such other manner as may be mutually agreed to by the Parties. At Purchaser's election, Purchaser may

7694679 v5

extend the Closing by an additional thirty (30) days by written notice delivered to Seller at least five (5) business days prior to the Closing, together with payment of a non-refundable deposit of $20,000.00 ("Extension Deposit"), payable in immediately available funds, delivered to the Escrow Agent to be held in escrow pursuant to the same terms as the Earnest Money.  The Extension Deposit shall be credited against the Purchase Price and shall be paid to Seller at the time of such extension.  Notwithstanding anything herein to the contrary, neither Party may extend the Closing Date by failing to deliver its respective deliveries set out in Section 7.3 (with respect to the Purchaser) and Section 7.2 (with respect to the Seller) on or before the date of Closing, unless the Parties otherwise agree in writing. In such event, provided that the conditions precedent to either Party's obligation to close have been met as of the Closing Date, such failure to deliver its respective deliveries shall be deemed a default under this Agreement in accordance with the terms and conditions of Article 9 hereof.

7.2     Seller's Deliveries.  Subject to the conditions precedent set forth in Section 6.2, Seller shall deliver in escrow to Escrow Agent the following instruments, each of which shall have been duly executed and, where applicable, acknowledged on behalf of Seller:

(a)     The Deed for the Real Property;

(b)     The Bill of Sale for the Personal Property;

(c)     The Assignment and Assumption Agreement;

(d)     A letter to each tenant of the Property (the "Tenant Notification Letter") in the form of **Exhibit F** attached to this Agreement;

(e)     a Tax Affidavit, duly executed by Seller, in the form of **Exhibit H** attached to this Agreement;

(f)     To the extent existing and its possession or reasonable control, Seller shall deliver, without representation or warranty of any kind: (i) the Leases; (ii) a schedule of operating expenses for the Property; and (iii) a current tax bill.  Seller will terminate all Contracts on or prior to Closing;

(g)     The Affidavit of Title in the form attached as Exhibit J, and such affidavits, transfer forms, or other documents as may be reasonably required by the Title Company solely in favor of the Title Company in order to issue the Title Policy or close the Transaction (collectively the "Additional Instruments"); provided, however, that, (i) except with respect to a customary gap indemnity, in no event shall Seller be required to provide any indemnities to Purchaser or the Title Company hereby, and (ii) with respect to any such Additional Instruments, they must be in form and substance acceptable to Seller and Seller shall only be obligated to opine with respect to facts thereunder to its then current actual knowledge and without having made, or being required to make, any independent investigation of the facts, and only with respect to those matters first occurring during the Receivership Period and Seller shall not otherwise be required to increase its liability hereunder in any material respect;

(h)     The Final Closing Statement (as defined below); and

11

(i)       Any other document or instrument required hereby or required to be executed by Seller in order to record the Deed.

7.3     <u>Purchaser's Deliveries</u>.  At Closing, Purchaser shall deliver in escrow to Escrow Agent the following, each of which, as applicable, shall have been duly executed and, where applicable, acknowledged on behalf of Purchaser:

(a)       The Purchase Price described in <u>Section 2.2</u>;

(b)       An original counterpart of the Assignment and Assumption Agreement;

(c)       The Final Closing Statement (as defined below), duly executed by Purchaser;

(d)       An original Environmental Indemnity in the form of **<u>Exhibit G</u>** attached hereto, duly executed by Purchaser;

(e)       An original counterpart of the Tenant Notification Letter;

(f)        An original counterpart of the Bill of Sale and Assignment;

(g)       Such evidence of the authority and capacity of Purchaser and its Representatives as the Escrow Agent and Title Company may reasonably require; and

(h)       Any documents or instruments required hereby or required to be executed by Purchaser in order to record any Deed or Assignment or Assumption Agreement.

7.4     <u>Closing Costs</u>.  Purchaser shall pay for all costs and expenses associated with the conveyance of the Property, and as set forth in the Sale Order, including, but not limited to, Survey costs and expenses, title insurance premiums and fees (including, but not limited to the premium for the Title Policy and any premium attributable to any extended coverage or the issuance of any endorsements thereto or the deletion of any exceptions including the standard exceptions), any fees for a loan policy of title insurance issued by the Title Company or any other title insurance company, recording fees and taxes, all costs associated with the assignment and assumption of the Leases, any customary escrow fee charged by the Escrow Agent in connection with the Closing, any due diligence expenses incurred by Purchaser, and all other fees or charges of the Escrow Agent and Title Company in connection with the Closing of the Transaction.  Each party shall be responsible for the payment of its own attorney's fees incurred in connection with the Transaction.

7.5     <u>Prorations</u>.

(a)     <u>Apportionments Generally</u>. The following items shall be adjusted at Closing:

(i)       For purposes hereof, the term "<u>Adjustment Time</u>" means 12:01 a.m. Eastern Time on the day of the Closing.

(ii)      Real estate taxes and any prepaid expenses relating to the operation of the Property shall be adjusted as of the Adjustment Time.

(iii)     Utility deposits, or other operating expenses of the Property paid by Seller for any period subsequent to the Adjustment Time shall be credited to Seller at Closing.

(iv)     Any income received by Seller from any tenants of the Property (each a "<u>Tenant</u>," collective, the "<u>Tenants</u>") allocable to the period from and after the Adjustment Time shall be credited to Purchaser at Closing. Seller shall remain entitled to all Rents owing prior to the Closing Date, and shall be responsible for their collection, and Purchaser will not be responsible for collecting such Rents for Seller, but if received by Purchaser, Purchaser will promptly forward such Rent to the Seller. If, following Closing, Seller or Purchaser receives any Rent attributable to any time period prior to Closing which is not the subject of prorations under this <u>Section 7.5(a)(iv)</u>, such Rent will be the property of Seller and, if received by Purchaser, Purchaser will promptly forward such Rent to Seller. Seller shall submit to Purchaser any Rent payments received after Closing no later than ten Business Days from its receipt.  To the extent a Tenant owes Rent for a period prior to the Closing Date and owes Rent for a period from the Closing Date, and makes a payment to Purchaser, Purchaser shall first apply such amount to current Rent owed to Purchaser, with any balance to be promptly remitted to Seller.  Without limiting the provisions of this subsection (iv), Seller hereby reserves its right to bring legal proceedings directly against Tenants for collection of any Rent due Seller from such Tenants (without seeking eviction of any Tenant).  The term "<u>Rent</u>" or "<u>Rents</u>" shall mean rents due or to become due from Tenants under the Leases, including fixed rent, additional rentals, percentage rentals, escalation rentals (which include each Tenant's prorated share of building operation and maintenance costs and expenses as provided under the Leases), retroactive rentals, all administrative charges, utility charges, Tenant or real property association dues, storage rentals, special event proceeds, temporary rents, telephone receipts, locker rentals, vending machine receipts and other sums and charges payable by Tenants under the Leases or from other occupants or users of the Property.

(v)     Except as specifically provided in <u>Section 7.5(a)(i) through (iv)</u> hereof, there shall be no prorations of income or expenses at Closing, it being agreed that (i) after Closing, Purchaser shall be liable for the liabilities regarding the ownership and operation of the Property, including any Property-related obligations, costs and liabilities that arise after Closing, and (ii) after Closing, Purchaser shall be entitled to all revenue and income relating to the Property.

(vi)     At Closing, Purchaser shall assume responsibility for the payment of any Tenant Inducement Costs (as hereinafter defined) becoming due and payable from and after the Effective Date, including any Tenant Inducement Costs becoming due and payable by reason of Leases executed after the Effective Date and any Tenant Inducement Costs becoming due and payable from and after the Effective Date by reason of the expansion of the premises demised by a Lease existing as of the Effective Date or the renewal of a Lease existing as of the Effective Date.  If Seller shall have paid any such Tenant Inducement Costs as of the Closing Date, Purchaser shall reimburse Seller therefor at Closing.  For purposes of the foregoing provisions, the term "Tenant Inducement Costs" shall mean any payment required under a Lease to be paid by the landlord thereunder to or for the benefit of the Tenant thereunder which is in the nature of a tenant inducement, including

13

specifically, without limitation, tenant improvement costs, lease buyouts and moving allowance, but only for any such payments paid after the Effective Date.

(b)      Closing Statement.  Prior to the Closing Date, Seller and Purchaser shall cause the Title Company to prepare a draft closing statement, made in accordance with the terms hereof, setting forth amounts to be prorated between Seller and Purchaser at the Closing pursuant to this Article 7. The draft closing statement shall contain Seller's good faith estimate of the amounts (based on facts and circumstances then known to Seller), as of the date of the Closing, of the items to be prorated between Seller and Purchaser, or to be credited to either Party, pursuant to this Article 7. Seller and Purchaser shall cause the information set forth in the draft closing statement to be updated with actual information available as of the Closing Date. Not later than the Closing Date, Seller and Purchaser shall cause the Escrow Agent to update the closing statement for purposes of the Closing (the "Final Closing Statement"), which statement shall include the matters on which Seller and Purchaser have agreed pursuant to this Article 7, as updated with actual information as of the Closing Date. With respect to any matter on which Seller and Purchaser still disagree as of such time, Seller's good faith determination of the amount in question as of the Closing Date shall be deemed the agreed upon amount.  The amounts shown in such Final Closing Statement shall be used in determining the amounts due or credited to Seller at the Closing, and the Escrow Agent shall rely conclusively thereon in settling the accounts of Purchaser and Seller at the Closing.

7.6      Escrow Agent.  Upon authorization from Purchaser and Seller on the Closing Date, the Escrow Agent will:

(a)      record the Deed and release to Purchaser the Bill of Sale and Assignment, the Assignment and Assumption Agreement, the Tenant Notification Letter, the Leases, the Tax Affidavit; and

(b)      release to Seller the sale proceeds and all signed counterparts required under Section 7.3.

7.7      Municipal Inspections.  Seller shall apply for any smoke detector or similar certificates, certificate of occupancy, and/or shall schedule any inspections of the Property with the relevant municipality(ies) where the Property is located that may be required for the Closing. However, the cost and expense of obtaining such certificates, including, but not limited to any application fees, payment of charges related to violations, costs of repairs, replacements, remediation, alterations and improvements; and the undertaking of any remedies, repairs, replacements, remediation, alterations and improvements that may be required for issuance of such certificates, shall be the sole obligation of Purchaser.  For the avoidance of doubt, in no event shall Seller be obligated to undertake any repairs, replacements, remediation, alterations or improvements at the Property, nor remedy any existing violations, and Purchaser acknowledges the as-is nature of this transaction, as further set forth in Section 11.17 below.

**ARTICLE 8**
**CONDEMNATION; RISK OF LOSS**

8.1     <u>Condemnation</u>.  In the event of any actual or threatened taking, pursuant to the power of eminent domain, of all or any portion of the Real Property, Seller shall give written notice thereof to the Purchaser promptly after Seller learns or receives notice thereof. If all or any part of the Real Property which would materially adversely interfere with the operation or use of the Real Property as currently operated and used is, or is to be, so condemned or sold, Purchaser shall have the right to elect not to purchase the Real Property and to terminate this Agreement by written notice to Seller delivered within ten (10) business days after Purchaser's receipt of Seller's notice. If Purchaser elects to terminate this Agreement pursuant to the terms of this Section 8.1, then the Earnest Money shall be returned to Purchaser and all other rights and obligations of either Party under this Agreement (other than any indemnification rights and obligations under this Agreement and any other obligations which by the express terms of this Agreement are intended to survive any cancellation or termination of this Agreement (collectively, the "<u>Continuing Obligations</u>")) shall be terminated and this Agreement shall be of no further force or effect.  If Purchaser elects not to terminate this Agreement, or fails to timely exercise the foregoing termination right, Purchaser shall proceed with Closing without any reduction in the Purchase Price, provided that all proceeds, awards and other payments arising out of such condemnation or sale (actual or threatened) shall be paid or assigned, as applicable, to Purchaser at Closing.

8.2     <u>Risk of Loss</u>.  In the event of any fire or other casualty at the Real Property, Seller shall give written notice thereof to Purchaser promptly after Seller learns or receives notice thereof, and Purchaser shall proceed with the Closing without any reduction in the Purchase Price, provided, however, that Seller shall pay or assign, as applicable, all insurance proceeds and rights to proceeds arising out of such loss or damage to the applicable Purchaser at Closing, less any reasonable costs incurred by Seller to collect such proceeds and any portion of such proceeds that Seller uses to make temporary or emergency repairs that are reasonably consented to by such Purchaser plus any deductible under such insurance policies.

**ARTICLE 9**
**LIABILITY OF SELLER;**
**TERMINATION RIGHTS**

9.1     <u>Liability of Seller</u>.

(a)     Seller shall not be responsible and Purchaser hereby releases Seller from and against any Claims arising out of or in connection with the Property and the Transaction, known or unknown, regardless of whether the Claim arises out of events occurring prior to or after the Closing. The foregoing release includes Claims of which Purchaser is presently unaware or which Purchaser does not presently suspect to exist which, if known by Purchaser, would materially affect Purchaser's release of Seller. Purchaser has carefully reviewed this Section 9.1, has discussed its import with legal counsel, is fully aware of its consequences, and acknowledges that this <u>Section 9.1</u> is a material part of this Agreement.

(b)     Except as specifically set forth in this Agreement, Seller shall have no liability under this Agreement, or any other liability to Purchaser or its successors or assigns resulting from,

connected with, or arising out of, any breach or default except with respect to a Post-Closing Breach (as such term is hereinafter defined).  With respect to any Post-Closing Breach, Purchaser must deliver to Seller written notice and demand describing with specificity such breach within 30 days of the Closing Date, otherwise such breach or default will be deemed waived.  Seller's recourse obligations under this Agreement with respect to any breach or default by Seller (regardless of whether such default relates to any of its representations or warranties under this Agreement, relates to the Deed, or otherwise) which occurs or is discovered, brought, claimed or alleged by Purchaser following Closing (in any event a "<u>Post-Closing Breach</u>"), shall not exceed the aggregate sum of $10,000.00 (the "<u>Breach Cap</u>").  Seller shall have no liability to Purchaser after Closing for a breach or default of any of Seller's undertakings unless the valid claims for all such breaches and defaults amount, in the aggregate, to more than $5,000.00 (the "<u>Breach Floor</u>"). Notwithstanding anything to the contrary contained in this Agreement, (a) Purchaser's recourse against Seller for any liability of Seller under this Agreement shall be strictly limited to Seller's proceeds from the sale of the Property received from Purchaser (between the Breach Floor and the Breach Cap) and Purchaser shall have no recourse against any of Seller's other assets, and (b) in no event shall any entity or person, other than Seller itself, be liable for any obligations of Seller under this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, PURCHASER ACKNOWLEDGES AND AGREES THAT THE BREACH CAP REPRESENTS SELLER'S AGGREGATE MAXIMUM POTENTIAL LIABILITY UNDER THIS AGREEMENT FOR A POST-CLOSING BREACH AND, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL SELLER'S AGGREGATE LIABILITY UNDER THIS AGREEMENT FOR ANY POST-CLOSING BREACH EXCEED THE BREACH CAP, REGARDLESS OF THE NUMBER OF POST-CLOSING BREACHES WHICH MAY OCCUR OR HAVE OCCURRED AND REGARDLESS OF THE NUMBER OF DEMANDS MADE BY PURCHASER WHETHER RELATED TO ONE OR MULTIPLE POST-CLOSING BREACHES.  Except as expressly provided in this Section 9.1(b), neither Seller nor any other Seller Parties shall have any liability of any kind to Purchaser for any Post-Closing Breach.  This Section 9.1(b) shall survive the Closing and any termination of this Agreement.

9.2    <u>Termination by Purchaser</u>.  If Seller materially defaults in performing any of its obligations under this Agreement (including its obligation to sell the Property) for any reason other than a default by Purchaser under this Agreement, and Seller fails to cure any such default within three (3) Business Days after notice thereof from Purchaser, Purchaser may, at its option, elect to (a) seek specific performance of Seller's obligation to timely execute the documents required to convey the Property to Purchaser, so long as such action for specific performance is filed in a court of law of competent jurisdiction in the State of New Jersey, Bergen County, within thirty (30) days following the expiration of the foregoing three (3) Business Day period, it being understood and agreed that the remedy of specific performance shall not be available to enforce any other obligation of Seller under this Agreement, (b) terminate this Agreement by written notice delivered to the Seller at or prior to the Closing (in which event, however, the Continuing Obligations shall continue in effect), in which event the Earnest Money shall be refunded to Purchaser and all rights and obligations of Seller and Purchaser hereunder shall terminate immediately (except those which expressly survive the termination of this Agreement), or (c)  waive its right to terminate and, instead, to proceed to Closing.  Such election by Purchaser shall be its sole and exclusive remedy under this Agreement, under applicable law or in equity, and Purchaser shall not be entitled to any damages of any kind, whether actual, consequential, special, punitive or otherwise.

9.3     Termination by Seller.  If Purchaser materially defaults in performing any of its obligations under this Agreement (including its obligation to purchase any Property), and Purchaser fails to cure any such default within three (3) Business Days after notice thereof from Seller, and Purchaser has delivered the Earnest Money to the Escrow Agent as required under this Agreement, then Seller's sole remedy for such default shall be to terminate this Agreement and retain the Earnest Money as liquidated damages. Seller and Purchaser agree that it is difficult to determine, with any degree of certainty, the loss which Seller would incur in the event of Purchaser's failure to close the purchase of the Property, and the Parties have agreed that the amount of the Earnest Money represents a reasonable estimate of such loss and is intended as a liquidated damages provision.  If upon the determination of Seller's directors, trustees, members, or agents, as applicable, and upon advice of counsel, any term or provision of this Agreement shall prevent, amend, alter, or reduce Seller's ability to exercise its fiduciary duties under Applicable Law, Seller shall have the right to terminate this Agreement. Notwithstanding the foregoing, (a) if any portion of the Earnest Money is not delivered to Escrow Agent as required under this Agreement, Purchaser shall be in breach under this Agreement and Seller shall have the right to pursue any remedy available at law or in equity as a result of such breach, including specifically, (i) the right to terminate this Agreement and thereafter recover liquidated damages against Purchaser for Purchaser's breach of this Agreement, and (ii) the right to enforce specific performance of this Agreement; and (b) if Purchaser or any affiliate of Purchaser asserts a claim to the Property which clouds Seller's title thereto, and if such claim is found by a court of competent jurisdiction to be without merit, then Seller shall have all remedies available at law or in equity against Purchaser.  This Section 9.3 shall survive termination of this Agreement.

**ARTICLE 10**
**DUE DILIGENCE**

10.1     Feasibility Period.  Purchaser shall have the right to inspect the Property and conduct due diligence thereon provided Purchaser concludes all such inspections and investigation within twenty (20) days from the Effective Date hereof (the "Feasibility Period").  During the Feasibility Period, Purchaser may conduct or cause to be conducted on its behalf, reasonable physical and other investigations including review of applicable zoning, environmental and other ordinances, statutes and regulations, and feasibility studies with respect to the Property, including without limitation, review of all Leases, income and expense information (only to the extent that such items are in Seller's possession and control and have been obtained during the Receivership Period, and provided that Seller gives no representation or warranty with respect to any such items), wetlands, soil, title, architectural, traffic, engineering, geotechnical and environmental inspections, studies, investigations and/or tests (including marketing studies) to evaluate the condition of the Premises (and marketability thereof) (collectively, the "Feasibility Studies"); provided, however, that notwithstanding any provision hereinabove to the contrary, Purchaser shall not perform any drilling, test borings, soil samples, or other invasive activities or testing of any kind on the Property whatsoever.  Purchaser shall not retain an LSRP to conduct any environmental investigation. Seller agrees to permit Purchaser and Purchaser's contractors, engineers, employees, consultants and agents to otherwise enter upon the Property for the purpose of performing the Feasibility Studies provided Seller receives notice from Purchaser at least two (2) business days' prior to the proposed entry date and Seller confirms such time and date are acceptable.  As a result of the current COVID-19 Public Health Emergency and State of Emergency declared by New Jersey Governor Philip D. Murphy, when accessing the Property,

17

Purchaser and its contractors, engineers, employees, consultants and agents shall comply with all safety measures, guidance, recommendations and protocols recommended by the Centers for Disease Control and Prevention (CDC) and the New Jersey Department of Health.  All Feasibility Studies shall be at Purchaser's sole cost and expense.  Purchaser agrees to conduct the Feasibility Studies so as to cause a minimum of disruption to the operation of the Property and a minimum of inconvenience for Seller and the Tenants at the Property.  In no event shall Purchaser have access to occupied units.  Seller shall have a right to have a Representative present during all Feasibility Studies. Purchaser shall restore the Property to substantially the same condition it was in before Purchaser's entry upon same and Purchaser shall also indemnify, hold harmless and defend Seller and any of the other Seller Parties (as defined below) from and against all loss, liability, damage, litigation, sums paid in settlement of any of the foregoing and costs (including without limitation reasonable attorneys' fees and disbursements) arising out of death, bodily injury or property damage resulting from any act of Purchaser or its contractors, engineers, employees, consultants and agents in connection with the Feasibility Studies.  Prior to any entry upon the Property by Purchaser or Purchaser's contractors, engineers, employees, consultants and agents, Purchaser shall furnish Seller with a policy of liability insurance (or a certificate of the insurer evidencing such insurance) covering any claim for death, bodily injury or property damage arising out of acts of Purchaser and its contractors, engineers, employees, consultants and agents in connection with the Feasibility Studies, in an amount not less than $3,000,000 in the aggregate per person in respect of death, bodily injury or property damage and under which Seller and Owner shall be named as an additional insured. If Purchaser has employees, Purchaser shall provide Seller with evidence that it maintains worker's compensation insurance in accordance with applicable law prior to entry onto the Property. Any Purchaser or Representative of Purchaser with employees must provide Seller with evidence that it maintains worker's compensation insurance in accordance with applicable law prior to entry onto the Property. The foregoing shall not limit, diminish, negate or release Purchaser's indemnification obligations contained above.

10.2    <u>Delivery of Data</u>.  Purchaser shall deliver to Seller (without representation) copies of all raw data, test results, documents and reports obtained or generated in connection with the Feasibility Studies promptly after the receipt thereof regardless of whether Purchaser terminates this Agreement under Section 10.3 hereof.

10.3    <u>Right To Terminate During Feasibility Period</u>.

(a)    If Purchaser is not satisfied with the results of the Feasibility Studies, Purchaser shall have the right to terminate this Agreement by written notice to Seller given on or before the expiration of the Feasibility Period, whereupon the Earnest Money shall be paid by Escrow Agent to Purchaser, and the Parties shall have no further obligations hereunder except those that survive the termination of this Agreement.  In the event Purchaser fails to terminate this Agreement on or before the expiration of the Feasibility Period, Purchaser shall be deemed to have waived its right to terminate this Agreement pursuant to this Section 10, and the Earnest Money shall be non-refundable to Purchaser except as otherwise provided herein, but shall be applicable as a credit to the Purchase Price at Closing. The indemnity obligations of Purchaser set forth in this Article 10 and the release by Purchaser set forth below shall survive the Closing and any termination of this Agreement.

(b)     Purchaser shall deliver to Seller a copy of the Title Commitment and a notice of Purchaser's objections to title ("Title Objections"), on or before the expiration of the Feasibility Period.  If Purchaser fails to notify Seller of Title Objections prior to the expiration of the Feasibility Period, Purchaser shall be deemed to have waived its right to assert Title Objections. Seller shall within ten (10) business days of receipt of Purchaser's notice of Title Objections, notify Purchaser in writing whether or not Seller will remove the Title Objections.  In the event that Seller will not or cannot remove Title Objections (nothing contained herein shall obligate Seller to remove any Title Objections), then the Title Objections shall become Permitted Exceptions, without abatement in the Purchase Price or claim against Seller, unless Purchaser notifies Seller of its election to terminate this Agreement within five (5) business days after Purchaser's receipt of Seller's notice that Seller will not or cannot remove the Title Objections.  If Seller elects to remove Title Objections, then at Seller's option the Closing Date will be extended for the time reasonably required to enable Seller to remove Title Objections.  In no event shall Seller be liable to Purchaser for damages if Seller is unable or unwilling to cure any Title Objections as provided herein, any right to claim such damages being expressly waived by Purchaser.

10.4    <u>Tenant Estoppels</u>.  Purchaser shall have the right, at its sole cost and expense, to distribute estoppel certificates to all Tenants, in the form attached hereto as Exhibit K.  Seller will reasonably cooperate with Purchaser in the distribution of such certificates, but shall have no obligation to procure same or respond to Tenant's inquires.  All inquiries shall be directed to Purchaser.  Purchaser shall not unreasonably disturb Tenants nor unreasonably interfere with the use, occupancy or operations of the Property in procuring such estoppel certificates.  Receipt of estoppel certificates from Tenants shall not be a condition to Closing, nor shall Closing be delayed pending receipt of such certificates.

**ARTICLE 11**
**MISCELLANEOUS**

11.1    <u>Completeness; Modification</u>.  This Agreement constitutes the entire agreement between the Parties hereto with respect to the Transaction and supersedes all prior discussions, understandings, agreements and negotiations between the Parties hereto. This Agreement may be modified only by a written instrument duly executed by the Parties hereto.

11.2    <u>Assignments</u>.  Provided Closing will not be delayed, upon not less than two (2) Business Days' prior notice to Seller, Purchaser may assign its rights hereunder, without the consent of Seller, to any affiliate of Purchaser or a newly formed limited liability company(ies) controlled by, or under common control with Purchaser and in which Purchaser (directly or indirectly) is the managing member, general partner or manager; <u>provided</u>, <u>however</u>, that Purchaser shall remain liable under this Agreement and shall not be released from its obligations hereunder.

11.3    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and bind Purchaser and Seller and their respective successors and assigns.

11.4    <u>Days</u>.  If any action is required to be performed, or if any notice, consent or other communication is given, on a day that is a Saturday or Sunday or a legal holiday in the jurisdiction in which the action is required to be performed or in which is located the intended recipient of such

notice, consent or other communication, such performance shall be deemed to be required, and such notice, consent or other communication shall be deemed to be given, on the first (1st) Business Day following such Saturday, Sunday or legal holiday.  Unless otherwise specified herein, all references herein to a "day" or "days" shall refer to calendar days and not Business Days.

11.5     Governing Law.  This Agreement and all documents referred to herein shall be governed by and construed and interpreted in accordance with the laws of the State of New Jersey.

11.6     Counterparts.  To facilitate execution, this Agreement may be executed in as many counterparts as may be required.  It shall not be necessary that the signature on behalf of both Parties hereto appear on each counterpart hereof.  All counterparts hereof shall collectively constitute a single agreement.  This Agreement and any amendment shall be binding if executed with an original signature, by facsimile signature, by email through portable document format ("pdf") signature or by DocuSign electronic signatures.

11.7     Severability.  If any term, covenant or condition of this Agreement, or the application thereof to any Person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such term, covenant or condition to other persons or circumstances, shall not be affected thereby, and each term, covenant or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.8     Costs.  Regardless of whether Closing occurs hereunder, and except as otherwise expressly provided herein, each Party shall be responsible for its own costs in connection with this Agreement and the Transaction, including without limitation fees of attorneys, engineers and accountants.

11.9     Notices.  All notices, requests, demands and other communications hereunder shall be in writing and shall be delivered by hand, transmitted by facsimile transmission, sent by electronic mail in ".pdf" format, sent prepaid by Federal Express (or a comparable overnight delivery service) or sent by the United States mail, certified, postage prepaid, return receipt requested, at the addresses and with such copies as designated below.  Any notice, request, demand or other communication delivered or sent in the manner aforesaid shall be deemed given or made (as the case may be) when actually delivered to the intended recipient.

|  |  |
|---|---|
| If to Seller: | Colliers International NJ LLC |
| | c/o Colliers International |
| | 300 Interpace Parkway, Building C, 3rd Floor |
| | Parsippany NJ 07054 |
| | Attention: Richard J. Madison, Executive Managing Director |
| | (Richard.Madison@colliers.com) |
| | Attention: Jacklene Chesler, Executive Managing Director |
| | (Jacklene.Chesler@colliers.com) |
| | |
| with a copy to: | Sills Cummis & Gross P.C. |
| | One Riverfront Plaza |
| | Newark, New Jersey 07102 |

7694679 v5

Attention: Jaimee Katz Sussner (jsussner@sillscummis.com)

| | |
|---|---|
| If to Purchaser: | Stonegate Buildings LLC |
| | 386 Route 59, Suite 200 |
| | Airmont, New York 10952 |
| | Attention: Steven Gelbtuch |
| with a copy to: | Marc Wohlgemuth & Associates P.C. |
| | 21 Remsen Avenue, Suite 301 |
| | Monsey, New York 10952 |
| | Attention: Susan Sytner, Esq. |
| | (susans@marcwlaw.com) |
| | |
| If to Title Company: | Riverside Abstract LLC |
| | 212 Second Street, Suite 502 |
| | Lakewood, NJ 08701Attn: |
| | Attn: |
| | Email: |
| | |
| If to Escrow Agent: | Riverside Abstract LLC |
| | 212 Second Street, Suite 502 |
| | Lakewood, NJ 08701 |
| | Attn: |
| | Email: |

Or to such other address as the intended recipient may have specified in a notice to the other Party. Any Party hereto may change its address or designate different or other persons or entities to receive copies by notifying the other Party in the manner described in this Section. The attorneys for the Parties shall have the right to deliver notices on behalf of their respective clients.

11.10   Incorporation by Reference. All of the exhibits attached hereto are by this reference incorporated herein and made a part hereof

11.11   Further Assurances. Subject to the terms of Article 3 hereof, Seller and Purchaser each covenant and agree to sign, execute and deliver, or cause to be signed, executed and delivered, and to do or make, or cause to be done or made, upon the written request of the other Party, any and all agreements, instruments, papers, deeds, acts or things, supplemental, confirmatory or otherwise, as may be reasonably required by either Party for the purpose of or in connection with consummating the Transaction described herein.

11.12   No Partnership. This Agreement does not and shall not be construed to create a partnership, joint venture or any other relationship between the Parties hereto except the relationship of seller and purchaser specifically established hereby.

11.13   Time of Essence. Time is of the essence with respect to every provision hereof.

11.14   No Third-Party Beneficiary. The provisions of this Agreement and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller and

7694679 v5

Purchaser, only, and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions of this Agreement or of the documents to be executed and delivered at Closing

11.16   <u>Waiver of Jury Trial</u>.  **SELLER AND PURCHASER EACH HEREBY WAIVE ANY RIGHT TO JURY TRIAL IN CONNECTION WITH THE ENFORCEMENT BY SUCH PURCHASER, OR SELLER, OF ANY OF THEIR RESPECTIVE RIGHTS AND REMEDIES HEREUNDER.**

11.17   <u>Transfer Taxes</u>.  Seller shall be responsible for the payment of the Realty Transfer Fee, and Purchaser shall pay the so-called "Mansion Tax" in connection with the consummation of the sale transactions contemplated by this Agreement.

11.18   <u>No Representation; Purchaser's Duty to Review</u>.

**<u>AS A MATERIAL INDUCEMENT TO THE EXECUTION AND DELIVERY OF THIS AGREEMENT BY SELLER, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES EXPRESSLY CONTAINED IN THIS AGREEMENT, AND AS REFLECTED IN THE PURCHASE PRICE, PURCHASER IS PURCHASING THE PROPERTY IN AN "AS-IS, WHERE- IS" CONDITION AND IN AN "AS-IS, WHERE-IS" STATE OF REPAIR, AND WITH ALL FAULTS, IN EACH CASE AS OF CLOSING</u>.** WITHOUT LIMITING THE GENERALITY OF THE FOREGOING,   PURCHASER UNDERSTANDS AND AGREES THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH   GOVERNMENTAL   LAWS   (INCLUDING,   WITHOUT   LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY.   PURCHASER ACKNOWLEDGES AND AGREES THAT SUBJECT TO SELLER'S RECEIPT OF THE APPROVAL ORDER, UPON CLOSING, SELLER SHALL SELL AND TRANSFER TO PURCHASER, AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS".  PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER AND THE OTHER SELLER PARTIES ARE NOT LIABLE FOR OR BOUND BY, ANY EXPRESS OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING   TO   THE   PROPERTY   OR   RELATING   THERETO   (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY SELLER, OWNER, OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, OR ANY OF THEIR RESPECTIVE AGENTS, LOAN SERVICERS, EMPLOYEES, MEMBERS, SHAREHOLDERS, OFFICERS, DIRECTORS, MANAGERS,

7694679 v5

PARTNERS, ATTORNEYS, REPRESENTATIVES, AND EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS (COLLECTIVELY, "SELLER PARTIES"), CERTIFICATE HOLDERS AND BONDHOLDERS OF OWNER OR ANY MEMBER OF OWNER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING.   PURCHASER ACKNOWLEDGES AND UNDERSTANDS THAT SELLER CANNOT AND (EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT) DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES OR GIVE ANY ASSURANCES REGARDING THE TRUTH, ACCURACY OR COMPLETENESS OF ANY MATERIALS PROVIDED TO PURCHASER, INCLUDING, BUT NOT LIMITED TO THOSE MATERIALS PROVIDED TO PURCHASER PURSUANT TO SECTION 7.2(F) HEREOF. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO THE EXPIRATION OF THE FEASIBILITY PERIOD, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT, AND NO SUCH EXPRESS REPRESENTATIONS, WARRANTIES OR COVENANTS OF SELLER SHALL SURVIVE CLOSING.  THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING.

11.19   Release of Seller.

(a)   After the Closing Date, Purchaser irrevocably waives and releases, on behalf of Purchaser, Purchaser's agents, Purchaser's affiliates and all successors in title to the Property, any claims against Seller and the Seller Parties arising out of or in connection with any conditions, including subsurface conditions, whether known or unknown, latent or apparent, defects, violations of any applicable laws, rules, regulations or ordinances (including and whether such claims are based on or sound in contract, tort, statute, common law liability, contribution, indemnity, strict liability or any other theory or cause of action which Purchaser might have asserted or alleged against Seller or any of the other Seller Parties, at any time by reason of or arising out of any defects, physical conditions, violations of any applicable laws, rules, regulations or ordinances (including, without limitation, any environmental, housing or rent control laws, rules, regulations or ordinances) and any and all other acts, omissions, events, circumstances or matters regarding the Property or its occupancy or operation. The provisions of this Section 11.18 shall survive the Closing. Purchaser acknowledges and agrees that it has carefully reviewed this Section 11.18, has discussed its import with legal counsel, is fully aware of its consequences, and acknowledges that the provisions of this Section 11.18 are a material part of this Agreement.

(b)   The acceptance of the Deed by Purchaser shall be deemed to be a full performance and discharge of every representation, warranty and covenant made by Seller herein and every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this

Agreement, except those, if any, which are herein specifically stated to survive Closing, including, without limitation Section 9.1(b).

11.20   Broker.  Seller and Purchaser each warrant and represent to the other that they have not dealt with any broker, agent, finder or similar person in connection with this Agreement, other than Gebroe Hammer Associates (the "Broker").  Seller shall pay all commissions and fees due to Broker pursuant to a separate written agreement between Seller and Broker. Purchaser agrees to indemnify, defend and hold Seller harmless in full against all claims for commissions, fees and similar compensation asserted by anyone (including Broker) based on alleged dealings with Purchaser in connection with the Transaction.  The provisions of this Section 11.19 shall survive the Closing.

11.21   Confidentiality; Public Disclosure.  Purchaser agrees that it shall keep confidential this Agreement, the terms and conditions of this Agreement and all materials, documents and information pertaining to the Property and the Leases that are at any time (whether before or after the Effective Date) delivered or made available by Seller or any of its agents or representatives to the Purchaser or any of its agents or representatives, excluding any information that would otherwise be available to the public or that Seller has provided to any third party without a confidentiality restriction (collectively, the "Confidential Information") and that Purchaser shall not disclose the Confidential Information to any person or entity for any reason whatsoever except as specifically permitted herein or except as may be necessary to comply with the order of any court or any other Governmental Body of competent jurisdiction or as required by law or regulation. Purchaser shall restrict dissemination of Confidential Information within its own organization and to Purchaser's representatives, advisors, consultants or lenders and to the Title Company and Escrow Agent so that the Confidential Information shall be revealed only to the extent necessary to enable Purchaser to fulfill the terms of this Agreement.  Notwithstanding any term or provision of this Agreement to the contrary, the terms and provisions of this Section 11.20 shall survive any termination or cancellation of this Agreement (but not after Closing by Purchaser).  In the event this Agreement is terminated or Purchaser defaults hereunder, Purchaser shall promptly return to Seller any and all Confidential Information.  In the event of a breach or threatened breach by Purchaser or its agents under this Section 11.20, Seller shall be entitled to an injunction restraining Purchaser or its agents from disclosing, in whole or in part, any Confidential Information. Nothing herein shall be construed as prohibiting Seller from pursuing any other available remedy at law or in equity for such breach or threatened breach. Prior to Closing, any release to the public of information by Purchaser with respect to any matters set forth in this Agreement, including the existence of this Agreement, will be made only in the form approved by Seller and its counsel.

12.   Pre-Closing Covenant.  Seller covenants and agrees that between the Effective Date and until the Closing Date, to the extent it is legally entitled to do so, and provided same does not conflict with Seller's obligations (including limitations to Seller's obligations regarding the Property) set forth in the Receiver Order and Sale Order, but subject to events or conditions beyond Seller's reasonable control, Seller shall continue to maintain and operate the Property in accordance with Seller's customary maintenance procedures for the Property.

[SIGNATURES ON FOLLOWING PAGE]

7694679 v5

IN WITNESS WHEREOF, Seller and Purchaser have caused this Agreement to be executed as of the day and year first above written.

**<u>SELLER:</u>**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____
       Name:  Richard J. Madison
       Title:   Executive Managing Director

**<u>PURCHASER:</u>**

STONEGATE BUILDINGS LLC, a New Jersey limited liability company

By: _____
Name:
Title:

IN WITNESS WHEREOF, Seller and Purchaser have caused this Agreement to be executed as of the day and year first above written.

**SELLER:**

Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order

By: _____

      Name:  Richard J. Madison
      Title:  Executive Managing Director

**PURCHASER:**

STONEGATE BUILDINGS LLC, a New Jersey limited liability company

By: _____

Name:
Title:  Steven Gelbtuch

7694679 v5

## ESCROW AGENT RECEIPT

The undersigned Escrow Agent acknowledges receipt of three (3) originally executed counterparts of this Agreement and the Earnest Money in the amount of $50,000.00   .  The Escrow Agent agrees to hold and disburse the Earnest Money and any other funds deposited into escrow with the Escrow Agent in accordance with the terms of this Agreement.  The Escrow Agent agrees to immediately deliver to Seller and Purchaser an original counterpart of this Agreement executed by the Parties and the Escrow Agent.  Copies of the fully executed Agreement, signed also by the Escrow Agent, shall be delivered to Seller's counsel and Purchaser's counsel at the addresses listed in Section 11.9 above. The Escrow Agent does not assume and shall not be under any liability on account of performance or non-performance of any party to this Agreement and the Escrow Agent may at its option require the receipt of a release and authorization in writing from all Parties before paying the Earnest Money or any other funds held by Escrow Agent pursuant to this Agreement to either party.  The Escrow Agent has assigned this Agreement GF number: _____.

Dated: ~~March~~ 6   , 2021.
          April

RIVERSIDE ABSTRACT LLC

By:_____

      Name:  Akiva Shepard
      Title:   NJ Commercial Coordinator

**EXHIBIT A**

**OWNER, PROPERTY, PURCHASER, PURCHASE PRICE**

| Owner | Address | Purchaser | Purchase Price |
|---|---|---|---|
| Aljo Norse LLC | 125 6th Avenue, Clifton, NJ | Stonegate Buildings LLC | $1,950,000.00 |

Ex. A-1

# EXHIBIT B

## LEGAL DESCRIPTION OF LAND

**ADDRESS: 125 6th Avenue, Clifton, NJ** _____

### DESCRIPTION OF THE LAND

All that certain lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Clifton, County of Passaic, State of New Jersey.

BEGINNING at the southeast corner of West Second Street (formerly known as South Second Street) and Sixth Avenue; running thence

1. Westerly along West Second Street 125.00 feet; thence

2. Southerly at right angles to West Second Street 100.00 feet; thence

3. Easterly 11 feet more or less to Lot of William Mehringer; thence

4. Northerly along his line 25 feet, more or less, to a point where the same would intersect the southerly boundary line of Lot No. 39 if extended in a westerly direction; thence

5. Easterly along said line and said line if extended 114 feet more or less to Sixth Avenue; and thence

6. Northerly along Sixth Avenue 74 feet more or less to the place of BEGINNING.

BEING known and designated as Lots 35, 37, 38 & 39 in Block 7, as shown on a certain map entitled "Map A of Property of F. C. Beckwith & James Crooks, Lakeview, Passaic County, NJ", filed in the Office of the Clerk of Passaic County on May 2, 1901 as Map # 615.

The above description is in accordance with a survey made by Steven L. Koestner, P.E. & L.S. dated January 6, 2010.

NOTE FOR INFORMATION:  Being Lot(s) 11, Block 16.09, Tax Map of the City of Clifton, County of Passaic, State of New Jersey.

Ex. C-1

**EXHIBIT C**

**SALE ORDER**
**[attached]**

2

SILLS CUMMIS & GROSS P.C.
Jaimee Katz Sussner, Esq.
Joshua N. Howley, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000

*Attorneys for Court-Appointed Receiver*
*Colliers International NJ, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------x

WELLS FARGO BANK, NATIONAL     :    Civil Action No. 19-cv-17866 (MCA)(LDW)
ASSOCIATION, AS TRUSTEE FOR THE   :
REGISTERED HOLDERS OF AMHERST    :
PIERPOINT COMMERCIAL MORTGAGE   :
SECURITIES, LLC, MULTIFAMILY      :
MORTGAGE PASS-THROUGH        :
CERTIFICATES, SERIES 2019-SB59, *et al.*,   :

                Plaintiffs,       :

            vs.                  :          **ORDER SETTING FORTH**
                             :          <u>**SALE PROCEDURES**</u>
SETH LEVINE, *et al.*,           :

                Defendants.     :
                             :

----------------------------------------------------------x

     **THIS MATTER** having been opened to the Court by counsel for the plaintiffs in the

following actions: (i) *OREC NJ, LLC v. Levine, et al.*, Civil Action No. 19-cv-17421-MCA-LDW,

(ii) *Wells Fargo Bank, National Association v. Levine, et al.*, 19-cv-17866-MCA-LDW, (iii) *U.S.*

*Bank National Association v. Englewood Funding, LLC, et al.*, 19-cv-17865-MCA-LDW, (iv) *JLS*

*Equities LLC v. River Funding, LLC, et al.*, 19-cv-17615-MCA-LDW, (v) *Privcap Funding, LLC*

*v. Levine, et al.*, 19-cv-18122-MCA-LDW, and (vi) *Conventus, LLC v. Levine, et al.*, 19-cv-18137-

MCA-LDW (the "<u>**Actions**</u>"), and Sills Cummis & Gross P.C., in its capacity as counsel for the

court-appointed receiver in the Actions (the "**Receiver**"), for an Order setting forth the procedures for the property owners (collectively, the "**Property Owners**" and individually, the "**Property Owner**") identified as defendants in the Actions and/or the Receiver (collectively, the "**Seller**") to sell the subject properties that are identified in Exhibit A attached hereof (collectively, the "**Properties**" and individually, the "**Property**"); and any objections to entry of this Order that were filed having been addressed by the Court; and the Court having considered the papers submitted in connection with this application, and having heard the arguments of counsel, if any; and for good cause shown;

IT IS on this ___29th___ day of ___May___, 2020,

**ORDERED** as follows:

1.      The Seller is hereby authorized to execute non-binding contracts (each a "**Non-Binding Contract**") for the sale of one or more of the Properties.  Each Non-Binding Contract executed by the Seller shall contain a provision (the "**Disclaimer**") that the purchaser or other counter-party thereto shall not have any legally enforceable rights, claims or causes of action against the seller counter-party thereunder unless and until such Non-Binding Contract has been the subject of an final, non-appealable Approval Order (as herein defined) entered by this Court in accordance with the procedures set forth herein.

2.      Within three (3) business days of execution of a Non-Binding Contract, the proponent of the sale shall serve a copy of the Non-Binding Contract upon (i) the Property Owner(s), c/o Seth Levine, 636 South Forest Drive, Teaneck, New Jersey, with a copy to Jacob Kaplan, Esq., Brafman & Associates, P.C., 767 Third Avenue, 26th Floor, New York, New York 10017, Email: jkaplan@braflaw.com, (ii) Sills Cummis & Gross P.C. on behalf of the Receiver, (iii) the attorneys for the affected first mortgagee(s), (iv) those persons who have appeared in the

2

Action(s) relating to the subject Property(s), and (v) those persons purporting to hold secured debt or otherwise to have an interest in the subject Property(s), including any mezzanine lenders (collectively, the "**Parties**" and individually, a "**Party**"), via e-mail (or first class mail, if e-mail is not possible).

3.      Within three (3) business days thereafter, the proponent of the sale shall file proof of service of the Non-Binding Contract on the Parties.  The proponent of the sale shall serve the Parties with any and all proposed amendments, modifications and addenda to the Non-Binding Contract (which shall contain the Disclaimer provided for in paragraph 1 above) within three (3) business days after execution thereof, and shall file proof of service of any and all proposed amendments, modifications and addenda to the Non-Binding Contract originally served on the Parties.

4.      Upon the request of a Party, the proponent of a sale shall furnish, within seven (7) calendar days of the receipt of such request, information concerning the proposed purchaser and the transaction as the Party requests, including but not limited to information that would reasonably allow a Party to make a determination as to the proposed purchaser's financial wherewithal and other capabilities to close the transaction and the likelihood that any contingencies contained in the Non-Binding Contract can reasonably be satisfied.  Such information shall include the following information to the extent it can be obtained from the proposed purchaser: (i) confirmation whether the proposed purchase is all cash or is contingent upon financing; (ii) if financing is required, the name of the anticipated bank/lender; (iii) proof of funds sufficient to close; and (iv) information concerning the party(s) tendering the purchase offer, including a list of principals.

3

5.      Within thirty (30) calendar days of service of the Non-Binding Contract, the first mortgagee(s) and any other secured creditors with respect to the Property(s) that is/are the subject matter of such Non-Binding Contract (including any mezzanine lenders) shall provide payoff statements to the Property Owner(s) c/o Seth Levine, 636 South Forest Drive, Teaneck, New Jersey, with a copy to Jacob Kaplan, Esq., Brafman & Associates, P.C., 767 Third Avenue, 26th Floor, New York, New York 10017, Email: jkaplan@braflaw.com, and Sills Cummis & Gross P.C. on behalf of the Receiver, via e-mail (or first class mail, if e-mail is not possible). The payoff statements shall include per diem interest and a detailed breakdown of the amounts claimed to be due.  Additionally, the Receiver shall within such period provide a payoff statement setting forth all sums due to the Receiver in connection with the Property(s). The Property Owners and any Party holding secured debt or otherwise having an interest in the subject Property(s) shall be entitled to request and receive copies of such payoff statements.

6.      Within five (5) calendar days following receipt of all payoff statements, the Seller shall confirm in writing to the Property Owner(s) and any Party holding secured debt or otherwise having an interest in the subject Property(s) whether it agrees to pay the full sum demanded in the first mortgagee's payoff statement and all sums due to the Receiver in good funds at closing, without deduction or offsets of any kind.  In addition, the Seller shall within such five-day period advise such parties whether it agrees to pay any other secured creditors the full sum demanded in their payoff statements in good funds at closing, without deduction or offsets of any kind.

7.      In the event the Seller agrees to pay in full all sums demanded by the first mortgagee, any other secured creditors and the Receiver, the Seller may make a motion on no less than twenty-four (24) days' notice to the Parties for approval of the sale (a "**Sale Approval Motion**"). Each Sale Approval Motion shall include a proposed distribution schedule for all sale

4

proceeds, reflecting that the Seller shall pay the full sum demanded in the payoff statements provided by the first mortgagee(s) and any other secured creditors, together with all sums due to the Receiver, in good funds at closing, without deduction or offsets of any kind.

8.      Any objections to a Sale Approval Motion shall be made in accordance with the applicable rules of the Court.  Any disputes regarding the proposed distribution schedule shall be resolved insofar as possible in connection with the Court's consideration of a Sale Approval Motion.  To the extent any bona fide disputes with respect to the validity, extent or priority of a secured claim cannot be so resolved, the Court may require the escrow of any disputed secured claim amounts; provided, however, that the Court shall not approve the proposed sale or require the escrow of any disputed secured claim amounts without the consent of any secured creditor that is not being paid in full.

9.      If the Court approves the sale, the approval order (an **"Approval Order"**) shall state the manner in which the sale proceeds are to be distributed or, as applicable, escrowed.  In addition, any Approval Order shall set forth the terms, conditions and limitations under which the Seller shall be authorized to sign any and all closing documents necessary to convey title to the subject Property(s). The Approval Order shall further require that the Receiver be contacted forty-eight (48) hours prior to closing to ensure that any supplemental expenditures made by the Receiver and any other sums due to the Receiver with respect to the subject Property(s), as well as any protective advances made by any Party, are satisfied at closing, without deduction or offsets of any kind.

10.     At closing, to the extent existing and in its possession or reasonable control, the Receiver shall turn over to the purchaser copies of the following for each Property, without representation or warranty of any kind: (i) existing surveys and maps, (ii) leases, amendments, and

5

subleases, (iii) a certified rent roll, (iv) all approvals, applications, and communications to and from government agencies, boards, or bodies with respect to the Property, (v) a Schedule of Operating Expenses, (vi) copies of active vendor contracts, and (vii) a current tax bill.

11.     If, pursuant to an Approval Order, sale proceeds are escrowed by reason of any unresolved disputes, any party claiming an interest in such escrowed proceeds shall make a motion on notice to the Parties within thirty (30) calendar days following the closing of title seeking direction from the Court regarding the distribution of escrowed funds.  Any Party claiming an interest in the escrowed funds may respond to the motion in accordance with the applicable Court rules.

12.     Any surplus funds in excess of amounts needed to pay (i) all secured claims relating to such Property(s), (ii) any sums due to the Receiver, and (iii) normal closing costs (including reasonable attorneys' fees), shall be escrowed pending further order of the Court.  In no event shall the original Property Owner(s) and/or Seth Levine receive surplus funds absent further order of the Court.

13.     In the event that any person or entity, including but not limited to a Party, the respective Property Owner(s) and/or the Receiver, attempts to obtain Court approval of a sale with respect to any Property(s) without abiding by the terms and conditions of this Order, any Party or interest holder shall be deemed to have reserved, and not released, waived or impaired, any and all of its rights to object to such sale, and the entry of this Order and the terms thereof shall not be cited, referred to or relied upon as the basis for a finding that such Party has waived any of its rights or claims.

14.     The terms of this Order are not intended (i) to apply to any foreclosure action instituted by a first mortgagee or other secured creditor or (ii) to interfere with, or place limits or

6

8

conditions upon, the foreclosure of any properties by first mortgagees or other secured creditors.
Additionally, the terms of this Order shall not prevent the Parties from seeking approval of a sale
pursuant to state law in a pending foreclosure action.  State court approval of such a sale shall be
deemed to satisfy the requirement set forth in this Court's Amended Preliminary Injunction and
Receivership Order dated December 4, 2019 that Court approval be obtained for any sale.

*Leda Dunn Wettre*
_____
HON. LEDA DUNN WETTRE, U.S.M.J.

7

7694679 v5

## Exhibit A —
## <u>Subject Properties and Owners</u>

***Wells Fargo Bank, National Association v. Levine, et al.***
**Civil Action No. 19-cv-17866-MCA-LDW**

| Property Address | Property Owner |
|---|---|
| 337-341 68th Street<br>Guttenberg, New Jersey 07093 | Palisade LM LLC |
| 2817 Palisade Avenue<br>Union City, New Jersey 07087 | 2917 Palisade Ventures LLC |
| 125 6th Avenue<br>Clifton, New Jersey 07011 | Aljo Norse LLC |
| 337-339 Washington Street<br>Perth Amboy, New Jersey 08861 | Amboy Norse LLC |
| 76-90 Dehart Place<br>Elizabeth, New Jersey 07202 | Dehart Norse LLC |
| 17 Teaneck Road<br>Ridgefield Park, New Jersey 07660 | Jordan Ventures LLC |
| 95 Jewell Street<br>Garfield, New Jersey 07026 | Raleigh Norse Management LLC |
| 530 28th Street, 540 28th Street &<br>512 26th Street<br>Union City, New Jersey 07087 | Union City Funding LLC |
| 2911 Bergenline Avenue & 714 22nd<br>Street<br>Union City, New Jersey 07087 | Union Ventures LLC |
| 66-68 Wallis Avenue<br>Jersey City, New Jersey 07306 | Wallis Norse LLC |
| 222 White Horse Pike<br>Clementon, New Jersey 08021 | Clementon Norse LLC |
| 165 Quincy Avenue<br>Kearny, New Jersey 07032 | Kearny Norse LLC |
| 544 Beachway Avenue<br>Keansburg, New Jersey 07734 | Lenox Beachway LLC |

8

10

| Property Address | Property Owner |
|---|---|
| 388 Smith Street<br>Perth Amboy, New Jersey 08861 | PA Norse LLC |
| 300 Broadway<br>Westville, New Jersey 08093 | Woodbine Norse LLC |
| 429 St. Mihiel Drive<br>Delran, New Jersey 08075 | Riverside Norse LLC |
| 910 Gateway Boulevard<br>Westville, New Jersey 08903 | Westville Norse, LLC |
| 200 East Maple Avenue<br>Merchantville, New Jersey 08109 | Prospect Norse LLC |

9

**EXHIBIT D**

**FORM OF DEED**

Prepared By: _____

## <u>QUIT CLAIM DEED</u>

This Quit Claim Deed is made on _____, 20__,

**BETWEEN**

> **COLLIERS INTERNATIONAL NJ LLC, IN ITS CAPACITY AS THE COURT-APPOINTED RECEIVER** pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW (the "<u>Receivership Order</u>"), having an address of _____, referred to as

> **GRANTOR**

**AND** _____, a _____, having an address of _____, referred to as

> **GRANTEE**

The word "Grantee" shall mean all Grantees listed above.

> **Transfer of Ownership.**  The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee.  This transfer is made for the sum of _____ DOLLARS ($_____).  The Grantor acknowledges receipt of this money.

> **Tax Map Reference.**  (N.J.S.A. 46:15-1.1) Municipality of _____

Block No.  Lot No.                    Account No.

7694679 v5

☐   No property tax identification number is available on the date of this Deed.  (check box if applicable.)

          **Property.**  The property consists of the land in the _____, County of _____ and State of New Jersey.  The legal description is:

See Legal Description annexed hereto as Schedule "A" and made a part hereof.

          **Type of Deed.**  This Deed is called a Quitclaim Deed.  The Grantor makes no promises as to ownership or title, but simply transfers whatever interest the Grantor has to the Grantee, subject to all matters listed on Schedule "B" attached hereto and made a part hereof.

          **Authority**.  Grantor's authority to execute and deliver this Deed is given pursuant to that certain [_____], entered by the [_____] on [_____], 20__[1], entered in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW, and Grantor's execution and delivery of this Deed is strictly in its capacity as receiver pursuant to the Receivership Order.

[SIGNATURE ON FOLLOWING PAGE]

---

[1] Insert information related to the Sale Order.

7694679 v5

**Signatures.**  The Grantor signs this Deed as of the date at the top of the first page.  If the Grantor is a corporation, this Deed is signed and attested to by its proper corporate officers and its corporate seal is affixed.

WITNESSED BY:                    **COLLIERS INTERNATIONAL NJ LLC, IN ITS CAPACITY AS THE COURT-APPOINTED RECEIVER** pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW

_____       By: _____

                                        Name:
                                        Title:

STATE OF NEW JERSEY
COUNTY OF _____ SS.:

I CERTIFY that on _____, 20\_\_\_\_, _____, personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a)    was the maker of the attached Deed;

(b)    was authorized to and did execute this Deed as _____ of Colliers International NJ LLC, the Court-Appointed Receiver for the Property, pursuant to the Receivership Order, the Grantor named in this Deed;

(c)    signed, sealed and delivered this Deed as his or her voluntary act and deed;

(d)    made this Deed for $_____ as the full and actual consideration paid or to be paid for the transfer of title.  (Such consideration is defined in N.J.S.A.  46:15-5).

_____
Notary Public

**RECORD & RETURN TO:**

_____
_____
_____

Ex. D-4

<u>SCHEDULE A</u>

Legal Description of the Property

(To Be Added)

<u>SCHEDULE B</u>

Permitted Exceptions

(To Be Added)

7694679 v5

**EXHIBIT E**

**FORM OF BILL OF SALE**

BILL OF SALE AND ASSIGNMENT

This BILL OF SALE AND ASSIGNMENT (this "Bill of Sale") is made from Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.,* Civil Action No. 19-cv-17866-MCA-LDW ("Assignor"), to [_____], a [_____] ("Assignee").

RECITALS

Pursuant to that certain Agreement of Purchase and Sale executed on _____, 2021, by Assignor and Assignee (the "PSA"; capitalized terms not defined herein have the meanings ascribed to them in the PSA), the Assignor has executed and delivered to Assignee on the date hereof that certain deed (the "Deed") pursuant to which Assignor is selling and conveying to Assignee the Real Property.

Assignor desires to assign, transfer and convey to Assignee, and Assignee desires to obtain as of the Closing Date the Tangible Personal Property, to the extent transferrable, all of Seller's utility and entitlement rights benefitting the Real Property (the "Utilities and Entitlement Rights"), and, to the extent transferrable, any easements (including, without limitation, reciprocal easement agreements, if any) belonging to or inuring to the benefit of the Seller and pertaining to the Real Property (the "Easements and Covenants"), all at the time of Closing, subject to the terms and conditions of the PSA.

NOW, THEREFORE, in consideration of the receipt of $10.00 and other good and valuable consideration paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor does hereby ASSIGN, TRANSFER, SET OVER, and DELIVER to Assignee the Tangible Personal Property, the Utilities and Entitlement Rights, and Easements and Covenants, subject to the terms and conditions of the PSA.

Notwithstanding anything to the contrary contained herein, Assignor's liability under this Bill of Sale is expressly subject to the limitations set forth in Section 9.1(b) of the PSA.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7694679 v5

EXECUTED to be effective as of _____, 2021.

**ASSIGNOR:**

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver
Order


By: _____
Name:  Richard J. Madison
Title:   Executive Managing Director

**ASSIGNEE:**

[_____],
a [_____]


By:_____
Name:_____
Title:_____

Ex. E-3

**EXHIBIT F**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

<u>ASSIGNMENT AND ASSUMPTION OF LEASES, SECURITY DEPOSITS,
AND INTANGIBLE RIGHTS</u>

This ASSIGNMENT AND ASSUMPTION OF LEASES, SECURITY DEPOSITS, AND INTANGIBLE RIGHTS (this "Assignment") is made by and between Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW ("<u>Assignor</u>"), to [_____], a [_____] ("<u>Assignee</u>").

<u>RECITALS</u>

Pursuant to that certain Agreement of Purchase and Sale executed on _____, 2021, by Assignor and Assignee (the "<u>PSA</u>"; capitalized terms not defined herein shall have the meaning ascribed to such terms in the PSA), the Assignor has executed and delivered to Assignee on the date hereof that certain deed (the "<u>Deed</u>") pursuant to which Assignor is selling and conveying to Assignee the Real Property.

Assignor desires to assign, transfer and convey to Assignee, and Assignee desires to assume, all of Assignor's right, title and interest in and to the Leases, the Security Deposits, and all assignable intangible personal property and general intangibles of every nature whatsoever (the "<u>Intangible Rights</u>"), to the extent permitted by law and assignable and the PSA, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the sum of $10.00 and other good and valuable consideration paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby SELL, ASSIGN, CONVEY, TRANSFER, SET-OVER and DELIVER unto Assignee all of Assignor's right, title and interest in and to the Leases, Security Deposits and the Intangible Rights.

This Assignment is made by Assignor and accepted by Assignee subject to the "<u>Permitted Exceptions</u>" described in the Deed, to the extent that the same validly exist and affect the Leases and Intangible Rights.

By execution of this Assignment and subject to all the terms and conditions of the PSA, Assignee assumes and agrees to perform all of the covenants, agreements and obligations under the Leases. Assignee hereby agrees to indemnify, hold harmless and defend Assignor from and against any and all third party obligations, liabilities, costs and claims (including reasonable attorneys' fees) arising as a result of or with respect to any of the Leases.

Notwithstanding anything to the contrary contained herein, Assignor's liability under this Assignment is expressly subject to the limitations set forth in **Section 9.1(b)** of the PSA.

Ex. F-1

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Ex. F-2

EXECUTED to be effective as of _____, 2021.

**ASSIGNOR:**

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver
Order

By: _____

Name:  Richard J. Madison

Title:   Executive Managing Director

Ex. F-3

**ASSIGNEE:**

[_____],
a [_____]


By:_____
Name:_____
Title:_____

Ex. F-4

**EXHIBIT G**

**FORM OF ENVIRONMENTAL INDEMNITY AGREEMENT**


In connection with the purchase by [_____], a [_____] ("Purchaser"), of certain property in Clifton, County of Passaic, New Jersey, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes (the "Property") from Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW ("**Seller**"), and in consideration of the conveyance of the Property by Seller, Purchaser hereby unconditionally and irrevocably waives any claim against Seller arising from the presence of Hazardous Substances on the Property. Further, Purchaser hereby indemnifies Seller and the other Seller Parties harmless from and against all loss, liability, damage and expense, including reasonable attorneys' fees, suffered or incurred by Seller arising out of or resulting from the introduction of such Hazardous Substances on the Property from and after the date hereof, including, without limitation, (a) any liability under or on account of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as the same may be amended from time to time or related regulations or any similar applicable laws or regulations, including the assertion of any lien thereunder (collectively, "Environmental Law"), (b) any loss of value of the Property as a result of the presence of Hazardous Substance, (c) claims brought by third parties for loss or damage incurred or sustained subsequent to the date hereof, which do not arise, result or are related to Seller's ownership and operation of the Property; and (d) liability with respect to any other matter affecting the Property resulting from noncompliance with any Environmental Law, not related to, arising out of or resulting from Seller's ownership and operation of the Property.  Capitalized terms not defined herein have the meanings given them in that certain Agreement of Purchase and Sale by and between Purchaser and Seller dated as of _____, 2021.

IN WITNESS WHEREOF, Purchaser has executed this Environmental Indemnity to be effective as of _____, 2021.

PURCHASER:

[_____],
a [_____]



By:_____
Name:_____
Title:_____

**EXHIBIT A TO ENVIRONMENTAL INDEMNITY AGREEMENT**

**PROPERTY**

**EXHIBIT H**

**FORM OF TAX AFFIDAVIT**

**SELLER'S NON-FOREIGN AFFIDAVIT**

| | |
|---|---|
| THE STATE OF _____ | § |
| _____ | § |
| COUNTY OF _____ | § |

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform [_____] ("Transferee"), that withholding of tax is not required upon the disposition of a U.S. real property interest by Colliers International NJ LLC, in its capacity as the Court-Appointed Receiver pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in *Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpoint Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al.*, Civil Action No. 19-cv-17866-MCA-LDW ("Transferor"), the undersigned hereby certifies as follows:

1.      Transferor is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terns are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Transferor's U.S. employer identification number is: # _____;

3.      Transferor's office address is [_____].

Transferor understands that this certification may be disclosed to the Internal Revenue Service by the Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury, the undersigned, in the capacity set forth below, hereby declares that he has examined this certification and to the best of its knowledge and belief it is true, correct, and complete, and the undersigned further declares that he has authority to sign this document in such capacity.

**[SIGNATURE ON NEXT PAGE]**

7694679 v5

**TRANSFEROR:**

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver
Order


By: _____
      Name:  Richard J. Madison
      Title:   Executive Managing Director


THE STATE OF _____ §
                                              §
COUNTY OF _____ §

       On this, the _____ day of _____, 2021, before me, the subscriber, a Notary Public in and for the State of _____, personally appeared Richard J. Madison, the Executive Managing Director of Colliers International NJ LLC, as Court-Appointed Receiver for the Property, pursuant to that certain Amended Preliminary Injunction and Receivership Order, entered on December 4, 2019, in Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Amherst Pierpont Commercial Mortgage Securities, LLC, Multifamily Mortgage Pass-Through Certificates, Series 2019-SB59, et al., v. Levine, et al., Civil Action No. 19-cv-17866-MCA-LDW.  He is personally known to me.


      _____
      Notary Public in and for the State of _____


      _____
      Printed/Typed Name of Notary

      My Commission Expires:  _____

Ex. H-2

**EXHIBIT I**

**FORM OF TENANT NOTICE LETTER**

**[Name and Address of Tenant]**

Date: _____, 2021

   Re: Sale of [_____] located at [_____]

Ladies and Gentlemen:

  Please be advised that _____, a _____ ("Purchaser") has purchased the captioned property, in which you occupy space as a tenant pursuant to a lease (the "Lease"), from [_____] ("Seller"), the court appointed Receiver of the Property.  In connection with such purchase, Seller has assigned its interest as landlord in the Lease to Purchaser and has transferred your security deposit in the amount of $_____ (the "Security Deposit") to Purchaser.  Purchaser specifically acknowledges the receipt of and responsibility for the Security Deposit, the intent of Purchaser and Seller being to relieve Seller of any liability for the return of the Security Deposit.

  All rental and other payments that become due subsequent to the date hereof should be payable to _____ and should be addressed as follows:

     _____

     _____

     _____

  In addition, all notices from you to the landlord concerning any matter relating to your tenancy should be sent to _____ at the address above.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7694679 v5

Very truly yours,

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver
Order

By: _____
      Name:  Richard J. Madison
      Title:   Executive Managing Director

Ex. I-2

**<u>PURCHASER</u>:**

[_____],
a [_____]


By:_____
Name:_____
Its:_____

Ex. I-3

**EXHIBIT J**

**AFFIDAVIT OF TITLE**

**STATE OF** _____                              )
                                                                            ) **ss:**
**COUNTY OF** _____                          )


_____ says under oath:

      1.    **Officers.**  I am an officer of Colliers International NJ LLC ("Receiver"), the Court-Appointed Receiver for the Property (hereafter defined).  I am fully familiar with the business of the Receiver.  I am a citizen of the United States of America and at least 18 years old.

      2.    **Representations.**  The statements contained in this affidavit are true to the best of my knowledge, information and belief.

      3.    **Ownership and Possession.**  Based solely on title commitment No. _____ dated _____ ("Title Commitment "), issued by _____ ("Title Company"), [Owner] has owned the property designated on the tax map of the _____ of _____, County of _____, New Jersey, as Block _____, Lot ____, commonly known as _____, New Jersey (the "Property") since _____.   The Property is being conveyed by Receiver to _____.

      4.    **Improvements.**  Receiver is not aware that anyone has filed or intends to file a mechanic's lien, stop notice, building contract or notice of unpaid balance related to the Property.  No one has notified Receiver that money is due and owing from Receiver for construction or repair work on the Property.

      5.    **Liens or Encumbrances.**  Receiver has not created or allowed any interests (legal rights) which affect its ownership or use of the Property.  To Receiver's actual knowledge, there are no pending lawsuits or judgments against Receiver or other legal obligations which may be enforced against the Property.  No bankruptcy or insolvency proceedings have been started by or against Receiver.

      6.    **Exceptions and Additions.**  The following is a complete list of exceptions and additions to the above statements: (a) items set forth in Section II of Schedule B of the Title Commitment, as modified to date by an authorized agent of said title insurer, (b) subject to all matters of record, (c) the Leases; and (d) the Receiver Order and all proceedings thereunder.

7694679 v5

7.      **Reliance.**  Receiver makes this affidavit in order to induce the Title Company to insure title to the Property.  It is aware that the Title Company will rely on the statements made in this affidavit and on its truthfulness.

**COLLIERS INTERNATIONAL NJ LLC**

Signed and sworn to before
me on _____, 20__                    By:_____
                                                                        Name:
_____                Title:
Notary Public

I-2

**EXHIBIT K**
**<u>FORM ESTOPPEL CERTIFICATE</u>**

TENANT'S
<u>ESTOPPEL CERTIFICATE</u>

PURCHASER:  _____
            _____
            _____


PREMISES:       125 6th Avenue
                Clifton, New Jersey

TENANT:         _____

LEASE DATED:    _____ (the "Lease")

LANDLORD:       _____

<u>OWNER (if different):</u>  _____

        As of the date hereof, the undersigned Tenant does hereby certify to Purchaser as follows:

        1. The Lease is in full force and effect, is binding upon Tenant and has not been assigned, modified, supplemented or amended, and Tenant has received no notice of assignment, pledge or hypothecation of the Lease or the rents payable thereunder.

        2. The expiration date of the term of the Lease is _____ and there are _____ (___) renewal option(s) in the Lease.

        3. All rents or other charges due as of the date hereof under the Lease have been paid through _____ and no rent under the Lease has been prepaid.  Tenant's monthly rental payment is $_____ and Tenant paid a security deposit in the amount of $ to [_____].

        4. The Tenant is in possession of the Premises.

        5. Tenant has no claims for repair work at the Premises, and acknowledges that the Premises are in the condition and repair required under the Lease.

        6. The Tenant is not in default and has not received or sent any notice wherein it is claimed that a default exists under the Lease and Tenant has no knowledge of any event that with the giving of notice, the passage of time, or both, would constitute a default under the Lease.

7. The Lease is and shall be subject to and subordinate to any and all mortgages which are or may be placed upon the Premises at any time, and to any renewals, replacements, additions, extensions, modifications, consolidations and spreaders of any of the foregoing.  This provision shall be self-operative and no further instrument of subordination shall be required.   In confirmation of said subordination Tenant shall, at Tenant's sole cost and expense, promptly execute any instrument that Purchaser or any of their respective successors in interest may request to evidence such subordination.

8. This certificate is made with the understanding that Purchaser will rely upon the representations and provisions contained herein.

Dated: _____, 2021

                                 [TENANT]

                     By:

                                 Name:
                                 Title:

7694679 v5

## AMENDMENT TO AGREEMENT OF PURCHASE

**THIS AMENDMENT TO AGREEMENT OF PURCHASE** (this "Amendment") is dated as of May 13 , 2021, by and between Colliers International NJ LLC, as Court-Appointed Receiver for the Property, Pursuant to the Receiver Order ("Seller"), and Stonegate Buildings, LLC ("Purchaser).

## W I T N E S S E T H :

**WHEREAS**, Seller and Purchaser entered into an Agreement of Purchase dated as of April 7, 2021 (the "Agreement"), for the sale of that certain property known as 125 6th Avenue, in the town of Clifton, State of New Jersey;

**WHEREAS**, the Due Diligence Period in the Agreement expired on April 27, 2021; and

**WHEREAS**, Seller and Purchaser agree to modify the Agreement as set forth herein; and

**WHEREAS,** capitalized terms used herein, but not defined, shall have the meanings given to such terms in the Agreement;  and

**WHEREAS**, from and after the date hereof, the term "Agreement" as used in the Agreement, or this Amendment shall mean the original Agreement, as modified by this Amendment;

**NOW THEREFORE**, in consideration of the mutual agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Due Diligence:  The Due Diligence Period shall be extended so same shall expire at 5:00pm on Thursday, May 13, 2021. All rights, duties, and obligations of the parties pursuant to the Due Diligence Period shall be extended until such date.

2.     Miscellaneous.  Except as expressly amended and modified hereby, the Agreement shall otherwise remain in full force and effect, Seller and Purchaser hereby ratifying and confirming the Agreement.  The Agreement, as modified by this Amendment, is the complete understanding between the parties with regarding to the subject matter herein described and supersedes all other prior agreements and representations regarding such subject matter.  To the extent of any inconsistency between the original Agreement and this Amendment, the terms of this Amendment shall control.  This Amendment shall be construed in accordance with the laws of the state of New Jersey. This Amendment may be executed and delivered in any number of counterparts, each of which together shall constitute an original.

3.     PDF/Facsimile Signatures.  PDF or Facsimile Signatures shall be deemed original signatures for the purposes hereof.

[SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment as of the day and year first written above.

SELLER:

Colliers International NJ LLC, as Court-Appointed
Receiver for the Property, Pursuant to the Receiver Order

By: _____

Richard J. Madison
Executive Managing Director

PURCHASER

Stonegate Buildings LLC, a New Jersey limited liability company

By: _____

Steven Gelbtuch
Managing Member

# Exhibit B





125 6th Avenue

Aljo Norse LLC

Wells Fargo Bank, N.A. v. Levine, et al.,

Civil Action No. 19-cv-17866 (MCA) (LDW)

April 2021

PREPARED BY:
Kirsten Cole
980-890-3127
kirsten.cole@colliers.com

# Table of Contents

1. Statement of Case

2. Balance Sheet

3. Income Statement

4. Receipt Register

5. Check Register

6. Aged Receivables

7. Accounts Payable Aging

8. Rent Roll

9. Bank Reconciliation and Statement

<u>Wells Fargo Statement of the Case</u>: In this action, plaintiff Wells Fargo Bank, N.A. seeks to foreclose a commercial mortgage encumbering certain residential apartment buildings located throughout the State of New Jersey, as more particularly identified and described in the Schedule annexed to this Court's Order appointing Colliers International NJ LLC to serve as the Receiver for the properties at issue. The corporate borrowers deferred maintenance and other management responsibilities for these properties, creating profound and immediate issues for which this appointment was necessary. Due to an ongoing criminal investigation, the managing member for these entities (Seth Levine) refused to provide critical operating information or to otherwise assist with the Receiver's assumption of the management responsibilities necessary to stabilize these assets at the time of its appointment. This Inventory and Report is provided pursuant to the Court's Order.

5/6/2021 10:47 AM

125 6th Avenue (1677-nj)

# Balance Sheet

Period = Apr 2021

Book = Cash ; Tree = ysi_bs

|  |  | Current Balance |
|---|---|---|
| **1000-0000** | **ASSETS** | |
| | | |
| **1005-0000** | **CASH & EQUIVALENTS** | |
| 1020-0000 | Cash-Operating | 15,125.90 |
| | | |
| **1099-9999** | **TOTAL CASH & EQUIVALENTS** | **15,125.90** |
| | | |
| **1999-9999** | **TOTAL ASSETS** | **15,125.90** |
| | | |
| **2000-0000** | **LIABILITY AND EQUITY** | |
| | | |
| **3000-0000** | **EQUITY** | |
| 3100-0300 | Funding from Loan Servicer | 36,316.82 |
| 3550-2700 | Distribution to Loan Servicer | -84,521.11 |
| 3800-0000 | Current Year Earnings | 10,740.60 |
| 3811-0000 | Prior Year Retained Earnings | 52,589.59 |
| | | |
| **3900-9999** | **TOTAL EQUITY** | **15,125.90** |
| | | |
| **3999-9999** | **TOTAL LIABILITY & EQUITY** | **15,125.90** |

**5/6/2021 10:46 AM**

125 6th Avenue (1677-nj)

# Income Statement

Period = Apr 2021

Book = Cash ; Tree = ysi_is

| | | Period to Date | % | Year to Date | % |
|---|---|---:|---:|---:|---:|
| **4001-0000** | **REVENUE** | | | | |
| | | | | | |
| **4005-0000** | **RENT** | | | | |
| 4006-0000 | Prepaid Income | 35.39 | 0.33 | 816.90 | 1.28 |
| 4110-0000 | Rent | 11,059.08 | 101.98 | 63,868.92 | 100.29 |
| 4190-0000 | Less: Free Rent | -250.00 | -2.31 | -1,000.00 | -1.57 |
| **4299-4999** | **TOTAL RENT** | **10,844.47** | **100.00** | **63,685.82** | **100.00** |
| | | | | | |
| **4998-9999** | **TOTAL REVENUE** | **10,844.47** | **100.00** | **63,685.82** | **100.00** |
| | | | | | |
| **5000-0000** | **OPERATING EXPENSES** | | | | |
| | | | | | |
| **5001-0000** | **RECOVERABLE EXPENSES** | | | | |
| | | | | | |
| **5002-0000** | **TAXES** | | | | |
| 5105-0000 | Real Estate Taxes | 6,984.84 | 64.41 | 6,984.84 | 10.97 |
| **5149-9999** | **TOTAL TAXES** | **6,984.84** | **64.41** | **6,984.84** | **10.97** |
| | | | | | |
| **5200-0000** | **UTILITIES** | | | | |
| 5205-0000 | Electricity | 122.25 | 1.13 | 639.51 | 1.00 |
| 5210-0000 | Gas | 81.40 | 0.75 | 374.63 | 0.59 |
| 5215-0000 | Water | 411.58 | 3.80 | 2,063.69 | 3.24 |
| **5249-9999** | **TOTAL UTILITIES** | **615.23** | **5.67** | **3,077.83** | **4.83** |
| | | | | | |
| **5250-0000** | **ENGINEERING** | | | | |
| 5255-0000 | Engineering Compensation | 1,861.75 | 17.17 | 8,830.94 | 13.87 |
| **5299-9999** | **TOTAL ENGINEERING** | **1,861.75** | **17.17** | **8,830.94** | **13.87** |

**5/6/2021 10:46 AM**

125 6th Avenue (1677-nj)

## Income Statement

Period = Apr 2021

Book = Cash ; Tree = ysi_is

| | | Period to Date | % | Year to Date | % |
|---|---|---:|---:|---:|---:|
| **5400-0000** | **PLUMBING** | | | | |
| 5405-0000 | Plumbing | 479.81 | 4.42 | 1,066.25 | 1.67 |
| 5420-0000 | Plumbing R & M | 4,403.62 | 40.61 | 5,075.36 | 7.97 |
| **5449-9999** | **TOTAL PLUMBING** | **4,883.43** | **45.03** | **6,141.61** | **9.64** |
| **5650-0000** | **GEN BLDG REPAIR/MAINT.** | | | | |
| 5655-0000 | General Building Expense | 0.00 | 0.00 | 1,295.41 | 2.03 |
| 5677-0000 | Signage | 0.00 | 0.00 | 43.54 | 0.07 |
| 5680-0000 | Pest Control | 0.00 | 0.00 | 807.69 | 1.27 |
| **5699-9999** | **TOTAL GEN BLDG REPAIR/MAINT.** | **0.00** | **0.00** | **2,146.64** | **3.37** |
| **5800-0000** | **MANAGEMENT/ADMIN** | | | | |
| 5805-0000 | Management Fees | 2,300.00 | 21.21 | 11,500.00 | 18.06 |
| 5810-0000 | Management Compensation | 0.00 | 0.00 | 595.20 | 0.93 |
| 5845-0000 | Telephone | 32.13 | 0.30 | 78.03 | 0.12 |
| 5890-0001 | Office - Other | 0.00 | 0.00 | 150.40 | 0.24 |
| 5895-0000 | Miscellaneous Operating Expense | 65.60 | 0.60 | 262.40 | 0.41 |
| **5899-9999** | **TOTAL MANAGEMENT/ADMIN** | **2,397.73** | **22.11** | **12,586.03** | **19.76** |
| **5950-9999** | **TOTAL RECOVERABLE EXPENSES** | **16,742.98** | **154.39** | **39,767.89** | **62.44** |
| **6000-0000** | **NON-RECOVERABLE EXPENSES** | | | | |
| **6100-0000** | **TAXES** | | | | |
| 6105-0000 | Real Estate Taxes | 0.00 | 0.00 | 6,984.86 | 10.97 |
| **6149-9999** | **TOTAL TAXES** | **0.00** | **0.00** | **6,984.86** | **10.97** |
| **6997-9999** | **TOTAL NON-RECOVERABLE EXPENSES** | **0.00** | **0.00** | **6,984.86** | **10.97** |
| **6998-9999** | **TOTAL OPERATING EXPENSES** | **16,742.98** | **154.39** | **46,752.75** | **73.41** |
| **6999-9999** | **NET OPERATING INCOME** | **-5,898.51** | **-54.39** | **16,933.07** | **26.59** |

**5/6/2021 10:46 AM**

125 6th Avenue (1677-nj)

## Income Statement

Period = Apr 2021

Book = Cash ; Tree = ysi_is

| | | Period to Date | % | Year to Date | % |
|---|---|---|---|---|---|
| **7000-0000** | **NON-OPERATING EXPENSES** | | | | |
| **7900-0000** | **PROFESSIONAL OTHER** | | | | |
| 7914-0000 | Legal Fees | 0.00 | 0.00 | 6,192.47 | 9.72 |
| **7949-9999** | **TOTAL PROFESSIONAL OTHER** | **0.00** | **0.00** | **6,192.47** | **9.72** |
| **9399-9999** | **TOTAL NON-OPERATING EXPENSES** | **0.00** | **0.00** | **6,192.47** | **9.72** |
| **9496-9999** | **NET INCOME** | **-5,898.51** | **-54.39** | **10,740.60** | **16.86** |

5/6/2021 10:49 AM

125 6th Avenue (1677-nj)
## Receipt Register
For Period = Apr 2021

| Control | Batch | Period | Date | Person | Property | Cash Acct | Account | | Job Code | Interco | Amount | Reference | Check # | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| R-1266561 | 482565 | 04/2021 | 4/2/2021 | Fortonato Rachough(rach1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 915.07 | | 157 | |
| R-1267575 | 483016 | 04/2021 | 4/6/2021 | Mark Kalish(kali1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 803.71 | | APPLY040621 | |
| | | | | | 1677-nj | 1020-0000 | 4006-0000 | Prepaid Income | | | -803.71 | | APPLY040621 | |
| R-1268284 | 483290 | 04/2021 | 4/7/2021 | Asmad's Beauty Salon(asma1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 1,114.90 | | 795 | |
| R-1268285 | 483290 | 04/2021 | 4/7/2021 | Nancy Asmad(nasm1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 860.00 | | 794 | |
| R-1268288 | 483290 | 04/2021 | 4/7/2021 | Madeline Giovanniello(giov1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 336.50 | | 3143 | |
| R-1268290 | 483290 | 04/2021 | 4/7/2021 | Peter Verdugo(verd1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 1,125.00 | | 2676359120 | |
| R-1268296 | 483293 | 04/2021 | 4/7/2021 | Madeline Giovanniello(giov1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 250.00 | | APPLY040721 | |
| | | | | | 1677-nj | 1020-0000 | 4190-0000 | Less: Free Rent | | | -250.00 | | APPLY040721 | |
| R-1270039 | 484026 | 04/2021 | 4/9/2021 | Khyati and Lamlihi(khya1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 875.00 | | 194 | |
| R-1270043 | 484026 | 04/2021 | 4/9/2021 | Ernesto Ferrera(erne1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 946.00 | | 26923335197 | |
| R-1270044 | 484026 | 04/2021 | 4/9/2021 | Sonia Diaz(diax1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 839.00 | | 27290404258 | |
| R-1270045 | 484026 | 04/2021 | 4/9/2021 | Sonia Diaz(diax1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 839.00 | | 27290404260 | |
| R-1270048 | 484026 | 04/2021 | 4/9/2021 | OM Supermarket LLC T/A H&M Food Market(omhm1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 15.00 | | 1372 | |
| | | | | | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 1,285.00 | | 1372 | |
| R-1274490 | 485974 | 04/2021 | 4/23/2021 | Oscar Rey(osca1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 854.90 | | 27290454660 | |
| | | | | | 1677-nj | 1020-0000 | 4006-0000 | Prepaid Income | | | 0.10 | | 27290454660 | |
| R-1274534 | 485988 | 04/2021 | 4/26/2021 | Sonia Diaz(diax1677) | 1677-nj | 1020-0000 | 4006-0000 | Prepaid Income | | | 839.00 | | 27290466156 | |
| R-1274536 | 485990 | 04/2021 | 4/26/2021 | Sonia Diaz(diax1677) | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | -182.10 | | APPLY042621 | |
| | | | | | 1677-nj | 1020-0000 | 4110-0000 | Rent | | | 182.10 | | APPLY042621 | |
| | | | | | | | | | | **Total** | 10,844.47 | | | |

125 6th Avenue (1677-nj)

**Check Register**

For Period = Apr 2021

| Control | Batch | Period | Date | Person | Property | Account | Job Code | Interco | Amount | Reference | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| K-1415510 | 286690 | 04/2021 | 4/6/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5420-0000 Plumbing R & M | | | 373.19 | 289 | 11/2/20-PLUMBING R&M- 125 6th Ave |
| K-1415511 | 286690 | 04/2021 | 4/6/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5420-0000 Plumbing R & M | | | 799.69 | 290 | 11/26/20-PLUMBING R&M- 125 6th Ave |
| K-1415512 | 286690 | 04/2021 | 4/6/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5420-0000 Plumbing R & M | | | 2,239.13 | 291 | 11/27/20-PLUMBING R&M- 125 6th Ave |
| K-1415513 | 286690 | 04/2021 | 4/6/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5420-0000 Plumbing R & M | | | 693.06 | 292 | 12/7/20-PLUMBING R&M- 125 6th Ave |
| K-1415514 | 286690 | 04/2021 | 4/6/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5420-0000 Plumbing R & M | | | 298.55 | 293 | 12/19/20-PLUMBING R&M- 125 6th Ave |
| K-1418328 | 287357 | 04/2021 | 4/13/2021 | Verizon Wireless (ver408) | 1677-nj | 5845-0000 Telephone | | | 16.11 | 294 | 02/24-03/23/21 - TELEPHONE |
| K-1418329 | 287357 | 04/2021 | 4/13/2021 | Verizon Wireless (ver408) | 1677-nj | 4840-0000 Telephone | | | 16.02 | 295 | 1/24-2/23/21 - Telephone |
| K-1420051 | 287761 | 04/2021 | 4/15/2021 | CITY OF CLIFTON (citcli9) | 1677-nj | 5105-0000 Real Estate Taxes | | | 6,984.84 | 41521 | 2nd Qtr property taxes + online fee $0.50 |
| K-1421563 | 288120 | 04/2021 | 4/20/2021 | COLLIERS INT'L HOLDINGS (USA), INC. (col1625) | 1677-nj | 5805-0000 Management Fees | | | 2,300.00 | 296 | 04.21 mgmt fee |
| K-1421564 | 288120 | 04/2021 | 4/20/2021 | COLLIERS INT'L HOLDINGS (col666a) (col666a) | 1677-nj | 5895-0000 Miscellaneous Operating Expense | | | 65.60 | 297 | |
| K-1421565 | 288120 | 04/2021 | 4/20/2021 | EMCOR Services Fluidics (emco9815) | 1677-nj | 5255-0000 Engineering Compensation | | | 1,861.75 | 298 | MAR 2021 -ENGINEERING COMP- 125 6th |
| K-1421566 | 288120 | 04/2021 | 4/20/2021 | Passaic Valley Water Commission (pass1139) | 1677-nj | 5215-0000 Water | | | 205.79 | 299 | WATER CHARGES FOR 125 6TH AVE CLIFTON |
| K-1421567 | 288120 | 04/2021 | 4/20/2021 | TOLEDO PLUMBING & HEATING INC (tolplu62) | 1677-nj | 5405-0000 Plumbing | | | 479.81 | 300 | PLUMBING SERVCIES TO 125 6TH AVE CLIFTON APT 4 |
| K-1424814 | 288969 | 04/2021 | 4/29/2021 | Passaic Valley Water Commission (pass1139) | 1677-nj | 5215-0000 Water | | | 205.79 | 301 | WATER CHARGES FOR 125 6TH AVE CLIFTON |
| K-1424815 | 288969 | 04/2021 | 4/29/2021 | PSE&G Co. (pseg1444) | 1677-nj | 5205-0000 Electricity | | | 122.25 | 302 | ELECTRICITY CHARGES FOR 125 6TH AVE CLIFTON |
| | | | | | 1677-nj | 5210-0000 Gas | | | 81.40 | 302 | GAS CHARGES FOR 125 6TH AVE CLIFTON |
| | | | | | | | | **Total** | 16,742.98 | | |

**5/6/2021 10:46 AM**

## Aging Detail

DB Caption: USA LIVE 7s   Property: 1677-nj   Status: Current, Past, Future   Age As Of: 04/30/2021   Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **125 6th Avenue (1677-nj)** | | | | | | | | | | | | | | |
| **Aziza Karam (kara1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Aziza Karam | Current | C-2194066 | rent | 10/1/2019 | 02/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2194067 | rent | 11/1/2019 | 02/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2194068 | rent | 12/1/2019 | 02/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2194069 | rent | 1/1/2020 | 02/2020 | 60.00 | 0.00 | 0.00 | 0.00 | 60.00 | 0.00 | 60.00 |
| 1677-nj | | Aziza Karam | Current | C-2199710 | rent | 2/1/2020 | 02/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2203189 | rent | 3/1/2020 | 03/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2202607 | rent | 4/1/2020 | 04/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2230369 | rent | 5/1/2020 | 05/2020 | 990.00 | 0.00 | 0.00 | 0.00 | 990.00 | 0.00 | 990.00 |
| 1677-nj | | Aziza Karam | Current | C-2259496 | rent | 6/1/2020 | 06/2020 | 990.00 | 0.00 | 0.00 | 0.00 | 990.00 | 0.00 | 990.00 |
| 1677-nj | | Aziza Karam | Current | C-2286611 | rent | 7/1/2020 | 07/2020 | 990.00 | 0.00 | 0.00 | 0.00 | 990.00 | 0.00 | 990.00 |
| 1677-nj | | Aziza Karam | Current | C-2322923 | rent | 8/1/2020 | 08/2020 | 990.00 | 0.00 | 0.00 | 0.00 | 990.00 | 0.00 | 990.00 |
| 1677-nj | | Aziza Karam | Current | C-2393647 | rent | 11/1/2020 | 11/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2415917 | rent | 12/1/2020 | 12/2020 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2441761 | rent | 1/1/2021 | 01/2021 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 |
| 1677-nj | | Aziza Karam | Current | C-2523681 | rent | 4/1/2021 | 04/2021 | 50.00 | 50.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 |
| | | **Aziza Karam** | | | | | | **5,460.00** | **990.00** | **0.00** | **0.00** | **4,470.00** | **0.00** | **5,460.00** |
| **Ernestina Reyes (reye1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Ernestina Reyes | Current | C-2230371 | rent | 5/1/2020 | 05/2020 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2393649 | rent | 11/1/2020 | 11/2020 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2415919 | rent | 12/1/2020 | 12/2020 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2441763 | rent | 1/1/2021 | 01/2021 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2464093 | rent | 2/1/2021 | 02/2021 | 1,000.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2491248 | rent | 3/1/2021 | 03/2021 | 1,000.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 1,000.00 |
| 1677-nj | | Ernestina Reyes | Current | C-2523683 | rent | 4/1/2021 | 04/2021 | 1,000.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 |
| | | **Ernestina Reyes** | | | | | | **7,000.00** | **1,000.00** | **1,000.00** | **1,000.00** | **4,000.00** | **0.00** | **7,000.00** |
| **Ernesto Ferrera (erne1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Ernesto Ferrera | Current | C-2194046 | rent | 10/1/2019 | 02/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2194047 | rent | 11/1/2019 | 02/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2194048 | rent | 12/1/2019 | 02/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2194049 | rent | 1/1/2020 | 02/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2199702 | rent | 2/1/2020 | 02/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2203181 | rent | 3/1/2020 | 03/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2202599 | rent | 4/1/2020 | 04/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2230361 | rent | 5/1/2020 | 05/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2259488 | rent | 6/1/2020 | 06/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |

5/6/2021 10:46 AM

## Aging Detail

DB Caption: USA LIVE 7s   Property: 1677-nj   Status: Current, Past, Future   Age As Of: 04/30/2021   Post To: 04/2021

| Property | Customer | Lease | Status | Tran# | Charge Code | Date | Month | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Pre-payments | Total Owed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1677-nj | | Ernesto Ferrera | Current | C-2286603 | rent | 7/1/2020 | 07/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2322915 | rent | 8/1/2020 | 08/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2363383 | rent | 10/1/2020 | 10/2020 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2393638 | rent | 11/1/2020 | 11/2020 | 308.00 | 0.00 | 0.00 | 0.00 | 308.00 | 0.00 | 308.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2415908 | rent | 12/1/2020 | 12/2020 | 155.00 | 0.00 | 0.00 | 0.00 | 155.00 | 0.00 | 155.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2441752 | rent | 1/1/2021 | 01/2021 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2464082 | rent | 2/1/2021 | 02/2021 | 154.00 | 0.00 | 0.00 | 154.00 | 0.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2491237 | rent | 3/1/2021 | 03/2021 | 154.00 | 0.00 | 154.00 | 0.00 | 0.00 | 0.00 | 154.00 |
| 1677-nj | | Ernesto Ferrera | Current | C-2523672 | rent | 4/1/2021 | 04/2021 | 154.00 | 154.00 | 0.00 | 0.00 | 0.00 | 0.00 | 154.00 |
| | | **Ernesto Ferrera** | | | | | | **2,927.00** | **154.00** | **154.00** | **154.00** | **2,465.00** | **0.00** | **2,927.00** |
| **Fortonato Rachough (rach1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Fortonato Rachough | Current | C-2194050 | rent | 10/1/2019 | 02/2020 | 0.07 | 0.00 | 0.00 | 0.00 | 0.07 | 0.00 | 0.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2194051 | rent | 11/1/2019 | 02/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2194052 | rent | 12/1/2019 | 02/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2194053 | rent | 1/1/2020 | 02/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2199709 | rent | 2/1/2020 | 02/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2203188 | rent | 3/1/2020 | 03/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2202606 | rent | 4/1/2020 | 04/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2230368 | rent | 5/1/2020 | 05/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2259495 | rent | 6/1/2020 | 06/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2286610 | rent | 7/1/2020 | 07/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2322922 | rent | 8/1/2020 | 08/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| 1677-nj | | Fortonato Rachough | Current | C-2338088 | rent | 9/1/2020 | 09/2020 | 9.07 | 0.00 | 0.00 | 0.00 | 9.07 | 0.00 | 9.07 |
| | | **Fortonato Rachough** | | | | | | **99.84** | **0.00** | **0.00** | **0.00** | **99.84** | **0.00** | **99.84** |
| **Khyati and Lamlihi (khya1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Khyati and Lamlihi | Current | C-2194070 | rent | 10/1/2019 | 02/2020 | 875.00 | 0.00 | 0.00 | 0.00 | 875.00 | 0.00 | 875.00 |
| | | **Khyati and Lamlihi** | | | | | | **875.00** | **0.00** | **0.00** | **0.00** | **875.00** | **0.00** | **875.00** |
| **Miledy Galvan (galv1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Miledy Galvan | Current | C-2441759 | rent | 1/1/2021 | 01/2021 | 0.08 | 0.00 | 0.00 | 0.00 | 0.08 | 0.00 | 0.08 |
| 1677-nj | | Miledy Galvan | Current | C-2523679 | rent | 4/1/2021 | 04/2021 | 1,155.66 | 1,155.66 | 0.00 | 0.00 | 0.00 | 0.00 | 1,155.66 |
| | | **Miledy Galvan** | | | | | | **1,155.74** | **1,155.66** | **0.00** | **0.00** | **0.08** | **0.00** | **1,155.74** |
| **OM Supermarket LLC T/A H&M Food Market (omhm1677)** | | | | | | | | | | | | | | |
| 1677-nj | | OM Supermarket LLC T/A H&M Food Market | Current | C-2259497 | rent | 6/1/2020 | 06/2020 | 977.00 | 0.00 | 0.00 | 0.00 | 977.00 | 0.00 | 977.00 |
| | | **OM Supermarket LLC T/A H&M Food Market** | | | | | | **977.00** | **0.00** | **0.00** | **0.00** | **977.00** | **0.00** | **977.00** |
| **Oscar Rey (osca1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Oscar Rey | Current | R-1246186 | Prepay | 2/17/2021 | 02/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.70 | -0.70 |
| 1677-nj | | Oscar Rey | Current | R-1258084 | Prepay | 3/15/2021 | 03/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.40 | -0.40 |
| 1677-nj | | Oscar Rey | Current | R-1274490 | Prepay | 4/23/2021 | 04/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -0.10 | -0.10 |
| | | **Oscar Rey** | | | | | | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **-1.20** | **-1.20** |
| **Peter Verdugo (verd1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Peter Verdugo | Current | C-2194086 | rent | 10/1/2019 | 02/2020 | 1,225.00 | 0.00 | 0.00 | 0.00 | 1,225.00 | 0.00 | 1,225.00 |
| 1677-nj | | Peter Verdugo | Current | C-2194088 | rent | 12/1/2019 | 02/2020 | 1,225.00 | 0.00 | 0.00 | 0.00 | 1,225.00 | 0.00 | 1,225.00 |
| 1677-nj | | Peter Verdugo | Current | C-2523685 | rent | 4/1/2021 | 04/2021 | 100.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| | | **Peter Verdugo** | | | | | | **2,550.00** | **100.00** | **0.00** | **0.00** | **2,450.00** | **0.00** | **2,550.00** |
| **Sonia Diaz (diax1677)** | | | | | | | | | | | | | | |
| 1677-nj | | Sonia Diaz | Current | C-2363386 | rent | 10/1/2020 | 10/2020 | 839.00 | 0.00 | 0.00 | 0.00 | 839.00 | 0.00 | 839.00 |
| 1677-nj | | Sonia Diaz | Current | R-1274534 | Prepay | 4/26/2021 | 04/2021 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -839.00 | -839.00 |
| | | **Sonia Diaz** | | | | | | **839.00** | **0.00** | **0.00** | **0.00** | **839.00** | **-839.00** | **0.00** |
| **1677-nj** | | | | | | | | **21,883.58** | **3,399.66** | **1,154.00** | **1,154.00** | **16,175.92** | **-840.20** | **21,043.38** |
| **Grand Total** | | | | | | | | **21,883.58** | **3,399.66** | **1,154.00** | **1,154.00** | **16,175.92** | **-840.20** | **21,043.38** |

UserId : kirstencole Date : 5/6/2021 Time : 10:45 AM

## Payables Aging Report

1677-nj

Period: 04/2021

As of : 04/30/2021

| Payee Code | Payee Name | Doc Seq # | Control | Batch Id | Property | Invoice Date | Due Date | Post Month | Account | Invoice # | Base Currency | Current Owed | 0-30 Owed | 31-60 Owed | 61-90 Owed | Over 90 Owed | Future Invoice | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

# Rent Roll

125 6th Avenue (1677-nj )

April 2021

| Suite No. | Tenant Name | Square Feet | Term | Security Deposit | Chg Code | Amount | Amount PSF | Date | Rate | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Current Monthly Charges** | | | **Base Rent Inc.** **CPI or Step Up** | | |
| APT1 | Miledy Galvan | 550 | 10/01/19 to *Original Lease 10/01/19* | $0.00 | rent | 1,155.66 | 2.10 | 10/1/19 | $1,155.66 | |
| APT10 | Ernestina Reyes | 550 | 10/01/19 to *Original Lease 10/01/19* | $0.00 | rent | 1,000.00 | 1.82 | 10/1/19 | $1,000.00 | |
| APT11 | Nancy Asmad | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 860.00 | 2.15 | 11/1/20 | $860.00 | |
| APT12 | Mark Kalish | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 803.71 | 2.01 | 10/1/19 | $803.71 | |
| APT2 | Ernesto Ferrera | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 1,100.00 | 2.75 | 10/1/19 | $1,100.00 | |
| APT3 | Fortonato Rachough | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 915.07 | 2.29 | 10/1/19 | $915.07 | |
| APT4 | Madeline Giovanniello | 550 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | frrent rent | (250.00) 586.50 | (0.45) 1.07 | 10/1/19 11/1/20 | $586.50 ($250.00) | |
| APT5 | Peter Verdugo | 550 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 1,225.00 | 2.23 | 10/1/19 | $1,225.00 | |
| APT6 | Oscar Rey | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 854.90 | 2.14 | 10/1/19 | $854.90 | |
| APT7 | Sonia Diaz | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 839.00 | 2.10 | 11/1/20 | $839.00 | |
| APT8 | Aziza Karam | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 990.00 | 2.48 | 10/1/19 | $990.00 | |

# Rent Roll

125 6th Avenue (1677-nj )

April 2021

| Suite No. | Tenant Name | Square Feet | Term | Security Deposit | Current Monthly Charges | | | Base Rent Inc. CPI or Step Up | | Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Chg Code | Amount | Amount PSF | Date | Rate | |
| APT9 | Khyati and Lamlihi | 400 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 875.00 | 2.19 | 11/1/20 | $875.00 | |
| S1 | Asmad's Beauty Salon | 425 | 10/01/19 to *Original Lease 10/01/19 to* | $0.00 | rent | 1,114.90 | 2.62 | 10/1/19 | $1,114.90 | |
| S2 | OM Supermarket LLC T/A H&M Food Market | 550 | 10/01/15 to *Original Lease 10/01/15 to* | $0.00 | rent | 1,285.00 | 2.34 | 10/1/20 | $1,285.00 | |

| Totals for 125 6th Avenue: | 6,375 | | $0.00 | | | |
|---|---|---|---|---|---|---|
| **Vacant:** | 0 | 0.00 % | | **Current Monthly Charges** | | |
| **Occupied:** | 6,375 | 100.00 % | | frrent | (250.00) | |
| | | | | rent | 13,604.74 | |

**125 6th Avenue Operating**

**Bank Reconciliation Report**

**4/30/2021**

5/6/2021

███████

**Posted by: DBO**

| | | | |
|---|---|---|---|
| **Balance Per Bank Statement as of 4/30/2021** | | | **15,741.13** |
| **Outstanding Checks** | | | |

| Check Date | Check Number | Payee | Amount |
|---|---|---|---|
| 4/20/2021 | 299 | pass1139 - Passaic Valley Water Commission | 205.79 |
| 4/29/2021 | 301 | pass1139 - Passaic Valley Water Commission | 205.79 |
| 4/29/2021 | 302 | pseg1444 - PSE&G Co. | 203.65 |
| **Less:** | **Outstanding Checks** | | **615.23** |
| | **Reconciled Bank Balance** | | **15,125.90** |

| | | | |
|---|---|---|---|
| **Balance per GL as of 4/30/2021** | | | **15,125.90** |
| | **Reconciled Balance Per G/L** | | **15,125.90** |

| | | | |
|---|---|---|---|
| **Difference** | (Reconciled Bank Balance And Reconciled Balance Per G/L) | | **0.00** |

*Kirsten Cole*

**125 6th Avenue Operating**

5/6/2021

**Bank Reconciliation Report**

**4/30/2021**

███████

**Posted by: DBO**

**Cleared Items:**

**Cleared Checks**

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 3/17/2021 | 281 | morris30 - Morris Sign Co | 43.54 | 4/30/2021 |
| 3/30/2021 | 285 | pass1139 - Passaic Valley Water Commission | 841.12 | 4/30/2021 |
| 3/30/2021 | 286 | pass1139 - Passaic Valley Water Commission | 205.79 | 4/30/2021 |
| 3/30/2021 | 287 | pseg1444 - PSE&G Co. | 214.85 | 4/30/2021 |
| 3/30/2021 | 288 | sillone - SILLS, CUMMIS & GROSS P.C. | 4,180.10 | 4/30/2021 |
| 4/6/2021 | 289 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 373.19 | 4/30/2021 |
| 4/6/2021 | 290 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 799.69 | 4/30/2021 |
| 4/6/2021 | 291 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 2,239.13 | 4/30/2021 |
| 4/6/2021 | 292 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 693.06 | 4/30/2021 |
| 4/6/2021 | 293 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 298.55 | 4/30/2021 |
| 4/13/2021 | 294 | veri408 - Verizon Wireless | 16.11 | 4/30/2021 |
| 4/13/2021 | 295 | veri408 - Verizon Wireless | 16.02 | 4/30/2021 |
| 4/15/2021 | 41521 | citcli9 - CITY OF CLIFTON | 6,984.84 | 4/30/2021 |
| 4/20/2021 | 296 | coll1625 - COLLIERS INT'L HOLDINGS (USA), INC. | 2,300.00 | 4/30/2021 |
| 4/20/2021 | 297 | coll666a - COLLIERS INT'L HOLDINGS (coll666a) | 65.60 | 4/30/2021 |
| 4/20/2021 | 298 | emco9815 - EMCOR Services Fluidics | 1,861.75 | 4/30/2021 |
| 4/20/2021 | 300 | tolplu62 - TOLEDO PLUMBING & HEATING INC | 479.81 | 4/30/2021 |
| **Total Cleared Checks** | | | **21,613.15** | |

**Cleared Deposits**

| Date | Tran # | Notes | Amount | Date Cleared |
|------|--------|-------|--------|--------------|
| 4/2/2021 | 112 | | 915.07 | 4/30/2021 |
| 4/7/2021 | 113 | | 3,436.40 | 4/30/2021 |
| 4/9/2021 | 114 | | 4,799.00 | 4/30/2021 |
| 4/23/2021 | 115 | | 855.00 | 4/30/2021 |
| 4/26/2021 | 116 | | 839.00 | 4/30/2021 |
| **Total Cleared Deposits** | | | **10,844.47** | |

# Capital One Bank
**Commercial Banking Group**

# MANAGE YOUR CASH
### CASH MANAGEMENT | CHECKING | MONEY MARKET | CDs | LOANS

ALJO NORSE LLC
DISTRICT OF NEW JERSEY
C/O COLLIERS INTERNATIONAL REMS US, LLC
AS RECEIVER
2550 WEST TYVOLA ROAD, SUITE 300
CHARLOTTE NC  28217

▸ Contact your Relationship Manager to discuss
targeted solutions for your evolving business needs.

## ACCOUNT SUMMARY      FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Blended Checking** ▆▆▆▆▆▆                                                          **ALJO NORSE LLC**

| | | | |
|---|---|---|---|
| Previous Balance  03/31/21 | $26,509.81 | Number of Days in Cycle | 30 |
| 5 Deposits/Credits | $10,844.47 | Minimum Balance This Cycle | $15,741.13 |
| 17 Checks/Debits | ($21,613.15) | Average Collected Balance | $24,453.81 |
| Service Charges | $0.00 | | |
| Ending Balance 04/30/21 | $15,741.13 | | |

## ACCOUNT DETAIL    FOR PERIOD  APRIL 01, 2021   -   APRIL 30, 2021

**Blended Checking** ▆▆▆▆▆▆                                                          **ALJO NORSE LLC**

| Date | Description | | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|---|---|---|---|---|---|
| 04/02 | Customer Deposit | | $915.07 | | $27,424.88 |
| 04/05 | Check | 287 | | $214.85 | $27,210.03 |
| 04/07 | Customer Deposit | | $3,436.40 | | $30,646.43 |
| 04/09 | Customer Deposit | | $4,799.00 | | $35,445.43 |
| 04/13 | Check | 291 | | $2,239.13 | $33,206.30 |
| 04/13 | Check | 290 | | $799.69 | $32,406.61 |
| 04/13 | Check | 292 | | $693.06 | $31,713.55 |
| 04/13 | Check | 289 | | $373.19 | $31,340.36 |
| 04/13 | Check | 293 | | $298.55 | $31,041.81 |
| 04/16 | ACH Withdrawal CITY OF CLIFTON  TAX BILL 041621 International Colliers 000000XXXXX6464 | | | $6,984.84 | $24,056.97 |
| 04/16 | Check | 294 | | $16.11 | $24,040.86 |
| 04/16 | Check | 295 | | $16.02 | $24,024.84 |
| 04/19 | Check | 285 | | $841.12 | $23,183.72 |
| 04/19 | Check | 286 | | $205.79 | $22,977.93 |
| 04/20 | Check | 281 | | $43.54 | $22,934.39 |
| 04/21 | Check | 288 | | $4,180.10 | $18,754.29 |
| 04/23 | Customer Deposit | | $855.00 | | $19,609.29 |
| 04/26 | Customer Deposit | | $839.00 | | $20,448.29 |

*Thank you for banking with us.*

Products and services are offered by Capital One, N.A., Member FDIC.
©2021 Capital One. All rights reserved.



## ACCOUNT DETAIL    CONTINUED FOR PERIOD  APRIL 01, 2021   -   APRIL 30, 2021

| Date | Description | | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|------|-------------|-----|------------------|--------------------|--------------------|
| 04/26 | Check | 296 | | $2,300.00 | $18,148.29 |
| 04/26 | Check | 297 | | $65.60 | $18,082.69 |
| 04/28 | Check | 298 | | $1,861.75 | $16,220.94 |
| 04/29 | Check | 300 | | $479.81 | $15,741.13 |
| **Total** | | | $10,844.47 | $21,613.15 | |

**Blended Checking** ███████████                                        **ALJO NORSE LLC**

**Checks** * designates gap in check sequence

| Check No. | Date | Amount | Check No. | Date | Amount | Check No. | Date | Amount |
|-----------|------|--------|-----------|------|--------|-----------|------|--------|
| 281 | 04/20 | $43.54 | 290 | 04/13 | $799.69 | 295 | 04/16 | $16.02 |
| 285* | 04/19 | $841.12 | 291 | 04/13 | $2,239.13 | 296 | 04/26 | $2,300.00 |
| 286 | 04/19 | $205.79 | 292 | 04/13 | $693.06 | 297 | 04/26 | $65.60 |
| 287 | 04/05 | $214.85 | 293 | 04/13 | $298.55 | 298 | 04/28 | $1,861.75 |
| 288 | 04/21 | $4,180.10 | 294 | 04/16 | $16.11 | 300* | 04/29 | $479.81 |
| 289 | 04/13 | $373.19 | | | | | | |

PSI: 1 / SHC: 0 / LOB :C

**Aljo Norse Sec Dep**

5/6/2021

**Bank Reconciliation Report**

**4/30/2021**

███████

**Posted by: DBO**

| | |
|---|---|
| **Balance Per Bank Statement as of 4/30/2021** | **0.00** |
| **Reconciled Bank Balance** | **0.00** |
| | |
| **Balance per GL as of 4/30/2021** | **0.00** |
| **Reconciled Balance Per G/L** | **0.00** |
| | |
| **Difference**   (Reconciled Bank Balance And Reconciled Balance Per G/L) | **0.00** |

*Kirsten Cole*

# MANAGE YOUR CASH

**CASH MANAGEMENT | CHECKING | MONEY MARKET | CDs | LOANS**

ALJO NORSE LLC
DISTRICT OF NEW JERSEY-SECURITY DEPOSIT
C/O COLLIERS INTERNATIONAL REMS US, LLC
AS RECEIVER
2550 WEST TYVOLA ROAD, SUITE 300
CHARLOTTE NC  28217

▸ Contact your Relationship Manager to discuss
  targeted solutions for your evolving business needs.

## ACCOUNT SUMMARY  FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Commercial Tower** ███████████                                      **ALJO NORSE LLC**

| | | | |
|---|---|---|---|
| Previous Balance  03/31/21 | $0.00 | Number of Days in Cycle | 30 |
| 0 Deposits/Credits | $0.00 | Minimum Balance This Cycle | $0.00 |
| Interest Paid | $0.00 | Average Collected Balance | $0.00 |
| 0 Checks/Debits | $0.00 | Interest Earned During this Cycle | $0.00 |
| Service Charges | $0.00 | Interest Paid Year-To-Date | $0.00 |
| Ending Balance 04/30/21 | $0.00 | Annual Percentage Yield | 0.00% |
| | | (This Statement Period) | |

## ACCOUNT DETAIL  FOR PERIOD  APRIL 01, 2021  -  APRIL 30, 2021

**Commercial Tower** ███████████                                      **ALJO NORSE LLC**

| Date | Description | Deposits/Credits | Withdrawals/Debits | Resulting Balance |
|---|---|---|---|---|
| 04/01 | | | | $0.00 |
| | No Account Activity this Statement Period | | | |
| 04/30 | | | | $0.00 |
| *Total* | | $0.00 | $0.00 | |

No Items Processed

*Thank you for banking with us.*

Products and services are offered by Capital One, N.A., Member FDIC.
©2021 Capital One. All rights reserved.




MEMBER
FDIC

EQUAL HOUSING
LENDER

PSI: 0 / SHC: 0 / LOB :C